## First National Bank v. Union District Number One.

1. DRAINAGE—*Commissioners to Make Tax Levy Before Proceeding to do Additional Work.*—Under Sec. 41 of the Farm Drainage Act (Hurd's Statutes, 1897, 674), when the commissioners find it necessary to use money to repair work already done, or to more fully protect the lands of the district, they can use such funds as are on hand, but if there are no funds on hand, they must, before proceeding to do such additional work, make a new tax levy to pay for the same.

2. SAME—*Power of Commissioners.*—Drainage commissioners have no power to create an indebtedness in advance and then levy an assessment for the purpose of meeting it.

3. SAME—*Holders of Drainage Orders—When Entitled to Judgment.*—To entitle the holder of drainage orders issued to contractors for work done by them upon certain ditches, it must appear that he has a legal claim against the real estate within the district benefited by the improvement, for it can only be satisfied by special assessment upon such property.

Assumpsit, on drainage orders. Trial in the Circuit Court of Whiteside County; the Hon. FRANK D. RAMSEY, Judge, presiding. Finding and judgment for defendant; appeal by plaintiff. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

F. E. ANDREWS and A. A. WOLFERSPERGER, attorneys for appellant.

WHITE & SHELDON and C. L. SHELDON, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This is an action of assumpsit brought by appellant upon certain drainage orders issued to contractors for work done by them upon certain ditches for appellee, and assigned by such contractors to appellant.

Defendant filed a plea of the general issue and it was stipulated by the parties that the case should be tried on the declaration and general issue, and that the latter should have the effect of such proper special pleas as might have been pleaded. A jury having been waived, the case was tried by the court and judgment entered for appellee and against the appellant for costs. The appellee, drainage district, was organized in July, 1882, under what is known as the "farm drainage act." An assessment was made in 1883 upon the lands in the district for the sum of $6,622.67 for the construction of certain ditches to drain such lands, and thereupon contracts were let and the ditches constructed. Other assessments were made to complete said ditches and to keep the same in repair in 1884, 1887 and in 1890. In the summer of 1893, it appearing to the commissioners that the ditches were in places partially filled and were not benefiting the lands in the district in the manner designated by the enterprise, another assessment was made for the purpose of clearing the ditches, changing their location in places, and doing other work necessary to drain the lands in the district as originally contemplated. This assessment was made on the fifth day of October, 1893, and was for the sum of $5,073.75. The report of the engineer in charge of the work, based on his survey made in July, 1893, recommended the clearing out of the ditches, estimated that this work would require the removal of 31,037 cubic yards of earth at a cost of about $5,000, and the assessment was based upon this estimate. By reason of changes in the plans, and accidents to the work caused by an unusually severe storm, the same was not fully completed until June or July, 1895. The amount of earth removed had increased from the original estimate to about 100,000 cubic yards, and the cost to about $12,000. After the tax levied by the assessment of October 5, 1893, was exhausted, the commis-

628     Appellate Courts of Illinois.

Vol. 82.]     First Natl. Bank v. Union Dist. Number One..

sioners, having no funds to further prosecute the work, issued interest-bearing orders to the contractors who disposed of the greater part of them to banks in the neighborhood. The orders sued on in this case are some of those so issued and assigned.

The work having been completed, the drainage commissioners on August 31, 1895, levied a further assessment of $6,531.33 upon the lands in the district to pay the indebtedness already incurred and for which said orders had been issued.

While other questions are raised by the record in this case, the most important and the only one necessary for us to consider is whether the commissioners of the district could legally contract debts and afterward make an assessment upon the lands in the district to pay the same. Appellant contends that the contractors had a right to complete the work commenced by them and to look to the district for pay, notwithstanding the facts that the work done by them was largely in excess of that originally contemplated, and the funds raised by the assessment levied to pay for the same were exhausted; and also that an assessment might afterward be legally made to pay for such work by the proper authorities.

The case of Ricketts v. The Village of Hyde Park, 85 Ill. 110, is relied upon to sustain this position. In that case the court held that the corporate authorities of the village could levy an assessment to pay for work already done in good faith, but the court bases the decision upon the fact that the power to make an assessment for such purpose was clearly given by the statute. The farm drainage act contains no such provision. Section 41 of this act is as follows :

"After the completion of the work the commissioners shall thereafter keep the same in repair; and if they find by reason of error in locating or constructing the ditches or any of them, or from other causes, the lands of the district are not drained or protected as contemplated, or some of them receive but partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose, * * * provided in all such cases, if sufficient

funds are not on hand the commissioners shall make a new tax levy." Hurd Statutes 1897, 674.

We think it the evident intention of the above section of said act that where, after the completion of the work, the commissioners find it necessary to use more money to repair the work already done, or to more fully protect the lands of the district, they can use such funds as are on hand for that purpose, but if there are no funds on hand they must, before proceeding to do such additional work, make a new tax levy to pay for the same.

The statute gives the commissioners great power in the matter of the use of their discretion in doing work within the district. The character of the improvement and the manner in which it shall be done is left entirely to them, without consultation with the land owners. The only privilege conferred upon the latter is that of appealing to the County Court in case the tax assessed upon their lands is greater than the amount of benefits to accrue to the same by the proposed work. If the commissioners were given the right to first construct the work and then levy an assessment to pay for the same they might contract debts to an amount far in excess of the benefits derived by the land for such work; and if the land owners in such case should appeal to the County Court, as provided by law, and obtain relief from such assessment, the creditors of the district who did the work would be without remedy, as no assessment could be enforced to satisfy their demands. It is for the benefit alike of the land owners and the creditors of the district, that the assessment shall be first made and the contracts for the work proposed afterward let, to be paid for out of the funds to be raised by such assessment.

Our Supreme Court has directly held that drainage commissioners have no power to create an indebtednes in advance and then levy an assessment for the purpose of meeting it. Winkelmann v. Drainage District, 170 Ill. 37; Ahrens v. Drainage District, Id. 262.

It is true that the above cause arose under what is known as the "Levee Drainage Act," and it is therefore contended that the rule there laid down does not apply to this case.

In the opinion delivered in the former of the above cases
it is said, "We are unable to find any authority in any of
the drainage district acts authorizing the levy of an addi-
tional assessment for the purpose of paying the outstanding
liabilities of the district."

While there is a considerable difference in the two acts,
we know of no reason why the principle above enunciated
should not also apply to cases arising under the farm drain-
age act. The assessment in question having been levied
to pay an indebtedness created in advance was without
authority of law.

To entitle appellants to a judgment in this case it must
appear that they have a legal claim, not merely as against
the commissioners, but as against the real estate within the
district benefited by the improvement, for if judgment be
rendered, it can only be satisfied by special assessment upon
that property. Badger et al. v. Inlet Drainage District, 141
Ill. 540.

As the special assessment made by the commissioners to
pay these orders was illegal, for the reason that the work
was done and debt contracted before the assessment was
levied, it follows that appellant has no legal claim as against
the real estate in the district and therefore is not entitled
to a judgment in this case. The judgment of the court
below must therefore be affirmed.