THE FIRST NATIONAL BANK OF STERLING

*v.*

JOHN B. DREW.

*Opinion filed June 19, 1901.*

1. SALES—*when seller of "orders" is not liable to buyer for the amount paid.* The seller of orders issued to him by drainage commissioners for his services in ditching is not liable to the buyer for the amount paid, where the buyer failed to collect the orders owing to his delay in presenting them until the funds realized from the assessment had been exhausted by payment of other similar orders.

2. SAME—*extent of implied warranty on sale of "orders."* The seller of orders issued to him by drainage commissioners for his services impliedly warrants that the instruments are genuine and that he is the owner thereof and authorized to transfer title, but there is no implied warranty that they are issued by authority of law or that they are worth what they represent.

*First Nat. Bank* v. *Drew*, 93 Ill. App. 630, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding.

J. E. McPHERRAN, for appellant:

Where personal property of any kind is sold, there is on the part of the seller an implied warranty that he has the title to the property, and that it is what it purports to be. *Hannum* v. *Richardson*, 48 Vt. 508.

By the act of transferring it, the assignor engages the instrument is the valid obligation of those whose names are upon it. *Palmer* v. *Courtney*, 49 N. W. Rep. 754.

In the assignment of an instrument or contract in writing, even not negotiable, for a full and fair price, the assignor impliedly warrants that it is valid and that the maker is liable upon it, unless it clearly appears that the parties intended to the contrary. *Daskam* v. *Ullman*, 43 N. W. Rep. 321; *Tyler* v. *Bailey*, 71 Ill. 34; *Lunt* v. *Wren*, 113 id. 168; *Giffart* v. *West*, 33 Wis. 617.

C. L. SHELDON, and H. C. WARD, for appellee:

The orders sued on are not negotiable, and therefore no liability was incurred by appellee in signing his name on the back of said orders. *People* v. *Johnson,* 100 Ill. 545; *Hall* v. *Jackson County,* 5 Ill. App. 611.

Appellant is not entitled to recover the money paid appellee on account of these orders, either on the theory of an implied warranty in the sale thereof or of failure of consideration. *Otis* v. *Cullum,* 2 Otto, 447; *Littauer* v. *Goldman,* 72 N. Y. 506; Tiedeman on Com. Paper, sec. 244, pp. 404, 405; *Hall* v. *Conder,* 26 L. J. (C. P.) 138; *Lambert* v. *Heath,* 15 M. & W. 486.

The circuit court found, and the Appellate Court has affirmed such finding, that the orders in question were the valid orders of the district, a prior assessment having been made to meet the same, and that said orders would have been paid if appellant had presented the same in apt time or had presented the same after being notified so to do by appellee, and therefore such failure on the part of appellant constituted a good and valid defense to the orders; and such finding of fact by the Appellate Court is conclusive on this court, and eliminates from the case the attempt of appellant to have this court reconsider or find the facts differently from the Appellate Court. *Mann* v. *McKiernan,* 110 Ill. 19; *Miller* v. *Insurance Co.* id. 102; *Insurance Co.* v. *Sammons,* id. 166; *Mutual Aid Ass.* v. *Hall,* 118 id. 169; *Insurance Co.* v. *McKee,* 94 id. 494; *Montgomery* v. *Black,* 124 id. 57; *Alphin* v. *Working,* 132 id. 484; *Brewing Co.* v. *Manion,* 145 id. 182.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an action of assumpsit in the circuit court of Whiteside county, brought by the appellant, against the appellee, to recover the amount of three orders issued by Union Drainage District No. 1 of Hume and Prophetstown townships, in said county, to appellee, for work

done in said district, and which orders were purchased by appellant shortly after they were issued. The pleadings consist of the common counts and the general issue, with which was filed a stipulation that any defense might be made which could be proven if specially pleaded.. A jury having been waived, upon a trial before the court there was a judgment in favor of the appellee, which has been affirmed by the Appellate Court.

It is first contended that the trial court erred in holding that appellant's right to recover was barred by the Statute of Limitations upon any of said orders which had been transferred to it more than five years prior to the time of the commencement of this suit. Such error, if any, was not prejudicial to the appellant, as only one of said orders was transferred to the appellant more than five years prior to the commencement of the suit, and it was not sold and transferred by the appellee to the appellant and he did not receive anything from the appellant therefor. That order was sold by appellee to one Wait, and by him sold to the appellant. In no event could the appellant recover the amount of that order from the appellee.

It is next contended that the court erred in refusing to hold that by the sale of said orders by appellee to the appellant he impliedly warranted that such orders were valid and issued by authority of law; that said warranty had failed, and that appellant was entitled to recover of appellee the price paid by it to him therefor.

The evidence tended to show that on October 5, 1893, the commissioners of said district levied an assessment for $5073.75 upon the lands contained in the district, which, according to the estimate of the engineer, was deemed ample to complete the work then contemplated and about to be commenced; that $2029.50 of said assessment was payable February 1, 1894, and $3044.25 on February 1, 1895; that subsequent to the levying of said assessment, contracts were let for the work and orders

issued in payment thereof; that the cost of the work, when completed, greatly exceeded the amount of the estimate; that the moneys derived from the assessment of 1893 having been exhausted, to meet the deficiency, on August 31, 1895, a further assessment of $6531.33 was made, for which amount orders had before that time been issued and were then outstanding. In the year 1898, the orders now in suit not having been paid, the appellant brought an action thereon, against the district, in the circuit court of Whiteside county, and was defeated, which judgment, on appeal to the Appellate Court, was affirmed, (82 Ill. App. 626,) on the ground, as it appears, that the special assessment of 1895 was invalid because it was levied to pay an indebtedness contracted before the assessment was made. The orders in question are in the usual form, are drawn upon the treasurer of the district, are payable to appellee or his order, are signed by the commissioners of the district, and are dated September 1, 1894, for $172.02, October 13, 1894, for $492.30, and October 27, 1894, for $500, and recite upon their face that they are "for services for ditching." Subsequent to the time these orders were issued and were transferred to the appellant, and prior to the bringing of this suit, the assessment for 1893 was collected and paid out by the treasurer of the district upon orders similar to these, issued by the commissioners, and no reason is apparent in this record why these orders would not have been paid had they been presented to the treasurer of said district while he had funds in his hands. The appellee testifies, and he is not contradicted, that on June 22, 1895, he had a conversation with the cashier of the appellant, advised him that there was likely to be trouble about the collection of the assessment of 1895, and urged him to present these orders for payment, and that the cashier said to him, "I don't know what you have got to do with it; you have your money." The evidence tends to show there were ample funds in the hands of the treasurer to have paid these

orders at that time, which was soon thereafter drawn out upon other orders.

We do not think these orders were void, and the Appellate Court did not so hold in the case above referred to. They were issued by the commissioners of said district for a lawful purpose, a legal assessment having been made to pay them, and, so far as we can see, payment was not made solely because the money arising from such assessment was exhausted and there were no funds in the hands of the treasurer with which to pay them at the time they were presented for payment. The fact that they were not presented for payment while there were funds in the hands of the treasurer with which to pay them was not the fault of appellee, and we are unable to see why, as between him and appellant, he should be held liable for the payment thereof.

If, however, it be conceded that the orders were invalid for want of authority in the commissioners to issue the same, still we are of the opinion the appellant can not recover back from the appellee the amount it paid him therefor. The vendor of a chose in action, by its sale and transfer to the vendee and the receipt of the consideration therefor, impliedly warrants that it is genuine and not a forged instrument, and that he is the owner thereof and authorized to transfer the title thereto, subject to these exceptions only: the doctrine of *caveat emptor* applies to the purchaser thereof, and if the vendee desires a further warranty he should exact of the vendor a special guaranty before he pays his money, and not rely upon the warranty raised by implication of law. *Robinson* v. *McNeill,* 51 Ill. 225; *Tyler* v. *Bailey,* 71 id. 34; *Strong* v. *Loeffler,* 85 id. 73; *People's Bank* v. *Kurtz,* 99 Pa. St. 344; 44 Am. Rep. 112; *White* v. *Robinson,* 50 Mich. 73; *Littauer* v. *Goldman,* 72 N. Y. 506; 28 Am. Rep. 171; *Otis* v. *Cullum,* 92 U. S. 447.

"It is a general rule that one making a sale or transfer of a chose in action warrants its genuineness,—and

this is so whether he warrants it in terms or is silent at the time when the sale or transfer is made. The seller does not, however, undertake that the instrument is worth what it represents, but merely that it is what it purports to be." (15 Am. & Eng. Ency. of Law,—2d ed.—p. 1240.)

In *Robinson* v. *McNeill, supra,* the court say: "The mere transfer of the accounts as unpaid amounted to a warranty that they were so, as Robinson knew whether he had received payment, and would be guilty of a fraud in selling as unpaid a debt which had been actually discharged; but the sale implied no warranty that the accounts were collectible, and unless Robinson expressly warranted they were so, the fact that they were not would be no defense to the note."

In *Tyler* v. *Bailey, supra,* the court say (p. 36): "A person who sells personal property is always understood as warranting the title, and as a general, if not a uniform, rule, a person passing bank bills or commercial paper, or selling a chose in action, is understood and held as guarantor of the genuineness of the instrument,—and this, whether he does so in terms or is silent when the transfer is made. When appellants sold and delivered these land warrants there was an implied warranty that they were genuine, and the law implied an obligation to restore the money to the purchaser when it was ascertained they were counterfeit and an offer was made to return them in a reasonable time."

In *Strong* v. *Loeffler, supra,* it is said: "The assignor of what purports to be a tax certificate does warrant to the assignee that the paper is not a forgery, but there the implication of warranty ceases."

In *People's Bank* v. *Kurtz, supra,* it was held, on a sale of shares of corporate stock, there is no implied warranty that the stock has not been fraudulently issued by the officers in excess of the amount authorized by the charter.

In *White* v. *Robinson, supra,* the plaintiffs sued the defendant, who had sold them several school orders, on the

ground that a portion of them had been issued without authority. On the trial it appeared that they were signed by the parties who purported to sign them. The court say (p. 74): "The papers are not forged, and so far as the record shows there was no bad faith. * * * A sale of genuine documents may involve a warranty of title, but we do not think it involves any warranty that the officers had lawful authority to act in the given case. These papers were valid on their face, as is admitted, and we think, in the absence of any representation or fraud, plaintiffs took them for what they were worth."

In *Littauer* v. *Goldman, supra,* it was held, when the holder of a usurious note transfers the same for value, without endorsement, representation or knowledge of its illegality, he does not impliedly warrant its validity, and no action can be maintained against him by the purchaser to recover damages for the loss or for the purchase money, on the ground of failure of consideration.

The case of *Otis* v. *Cullum, supra,* was an action to recover back the amount paid for certain bonds issued by the city of Topeka under legislative authority, and which were held void on the ground that the legislature had no power to authorize the issue thereof, the basis of the action being a failure of consideration. The court say: "The seller is liable *ex delicto* for bad faith, and *ex contractu* there is an implied warranty on his part that they belong to him and that they are not forgeries. Where there is no express stipulation there is no liability beyond this. If the buyer desires special protection he must take a guaranty. He can dictate its terms and refuse to buy unless it be given. If not taken he cannot occupy the vantage ground upon which it would have placed him."

In this case the orders were genuine, and not forged, and there is no claim of bad faith. We are of the opinion the appellant took them for what they were worth. The judgment of the Appellate Court will therefore be affirmed.                          *Judgment affirmed.*