BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1902.

STATE ex rel. PARSONS, Appellant, v. JOHN WINKLEMAN et al., Respondents.

St. Louis Court of Appeals, October 7, 1902.

1. **Special Tax Levy: JUDGMENT: LEVEE COMPANY: SPECIAL LEVY FOR TAXES, WHEN IT WILL NOT BE MADE.** The Egyptian Levee Company was empowered by the Legislature to levy a tax not to exceed twenty-five cents on each hundred dollars valuation a year on the lands in a certain district to construct and repair earthworks to protect said lands from inundation. Respondent's assignor did repair work in the year 1885 for which he was never paid and the claim was put in judgment. Afterwards this action was begun in 1898 to compel the directors of the levee company to levy a special tax to pay the judgment. Levies to the full amount of twenty-five cents on each hundred dollars worth of land had been made in the year 1885 when the work was done and also in 1898 when this action was instituted. *Held*, that the respondents could not be compelled to make the special levy prayed for, because less than twenty-five cents on the hundred dollars had been levied in the intermediate years.

2. ———: ———: ———: **STATUTORY CONSTRUCTION: CONTRACTORS: NOTICE.** The meaning of the statutes bearing on the subject is that work shall not be ordered in any year in excess of the taxes authorized to be collected for that year. Contractors are

(223)

State ex rel. v. Winkleman.

bound to take notice of the restriction thus imposed and can not re-
cover for work ordered in disregard of it.

Appeal from Clark Circuit Court.—*Hon. Edwin R. McKee*, Judge.

AFFIRMED.

*T. L. & S. J. Montgomery* for appellant.

(1)   Section 19 of the charter of defendant com-
pany ·declares that the act incorporating it shall be
deemed a public act and shall be liberally construed
and shall take effect from and after its passage.   Ses-
sion Acts 1855, page 73-77.   (2)   The tax or assess-
ment of so much per acre where the money is expended
locally for the benefit of the land taxed, has been held
not to be unconstitutional, in construing the charter of
this company and levee laws of the State.   Egyptian
Levee Co. v. Hardin, 27 Mo. 495; Morrison v. Morey,.
146 Mo. 543, and cases cited.   Nugent v. Levee Com'rs,
58 Miss. 197.   (3)   Relator is a judgment creditor and
entitled to priority over contract debts, and the levy
of 1885 being exhausted or otherwise appropriated he·
is entitled to an additional assessment to pay his debt,
and the respondents having failed and refused to make
it may be compelled so to do by mandamus.   Sheridan
v. Fleming, 93 Mo. 321; State ex rel. v. Bolinger County
Court, 48 Mo. 475; Coy v. City of Lyons, 17 Iowa 1;
85 Am. Dec. 539; Brown v. Crego, 32 Iowa 498; Chi-
cago v. Heasley, 25 Ill. 595; Morrison v. Hinksan, 87
Ill. 587; Supervisors v. United States, 4 Wall. 435;.
Frank v. San Francisco, 21 Cal. 668.   (4)   The Egyp-
tian Levee Company, notwithstanding it was incorpor-
ated under a special act of the Legislature, is a political
subdivision of the State, which the State has power to·
create and as such subdivision it exercises the pre-
scribed functions of government in and over its dis-
trict and with the grant of power, to effectuate a pur-
pose, all the means necessary, and incidental thereto·
passes with the grant including the levy of additional

State ex rel. v. Winkleman.

assessment on the property within the district to pay for repairs for which it is indebted. Morrison v. Morey, 146 Mo. 561; State ex rel. v. Walbridge, 119 Mo. 394; Sutherland on Stat. Construc., sec. 341; 2 Beach on Pub. Cor., sec. 1314; Ex parte Marmaduke, 91 Mo. 262; Grover v. Huckins, 26 Mich. 476.    (5)    Under the pleadings, admitted facts and evidence in this cause the relator is entitled to have the writ of mandamus issue against respondents, requiring them, as directors, to levy a tax on the lands within the levee district sufficient to pay his judgment:    (a) Because respondents have not shown, as stated in their return, that they have made the levies they are authorized to make by virtue of their charter and amendments thereto in the way of a general levy to pay for work on their levee.    (b) Because they have not from year to year levied the fifteen cent levy they are authorized to make sufficient to pay costs of repair on the levees already constructed.    (6) It was the imperative duty of these directors, imposed by law, to pass on all things necessary and proper for the accomplishment, of the object of their charter; and the performance of such duties, when they fail to do so may be enforced by mandamus.    Flagg v. City of Palmyra, 33 Mo. 440; State ex rel. v. School Directors, 74 Mo. 22; State ex rel. v. Meyer, 80 Mo. 601; State ex rel. v. County Court Gasconade Co., 26 Mo. App. 446; State ex rel. v. Baker, 32 Mo. App. 98.

*Berkheimer & Dawson* for respondent.

(1)    A writ of mandamus will not be issued unless the action desired is of absolute obligation on the part of the person sought to be coerced, and the relator must not only show a clear legal right to have the thing done, but to have it done in the manner and form in which he desires the respondent to perform it.    State ex rel. v. Smith, 29 So. R. 40 (104 La. 370); High, Extraordinary Remedies (3 Ed.), secs. 40, 371; State v. Town of Guttenberg, 39 N. J. L. 660.    (2)    The writ if granted must also be effectual as a remedy, and

it must be within the power of the respondent as well his duty to do the act in question. High on Extraordinary Remedies (3 Ed.), sec. 9, page 13, and sec. 14, page 19; People v. Hatch, 33 Ill. 9; People v. Lieb, 85 Ill. 484. And it will not be granted against a public officer to procure the performance of an act which is not imposed upon him as a duty by law. High on Extraordinary Remedies (3 Ed.), sec. 10, page 16; State v. Vanwinkle, 43 N. J. L. 579. (3) Mandamus will not lie if it would prove futile or impossible of performance or beyond the power or means of the party to whom it is directed to perform its commands. State v. County Court, 35 S. E. 959; People v. Board of Commissioners, 52 N. E. 334; State v. Shelton, 73 N. W. 694; Young v. Lane, 62 N. W. 202. (4) An assessment levied to pay a drainage district indebtedness will not be sustained to reimburse the drainage commissioners for moneys advanced by them to pay the drainage indebtedness of the district. Winkleman v. Drainage District No. 2, 48 N. E. 715. (5) The directors of the respondent had no right to levy a tax for any purpose under the law of its being as that law provided. See Act, passed and approved March 18, 1872, Session Acts of 1872, page 220: "That all persons who pay taxes to said Egyptian Levee Company, shall be members of said company, and entitled to vote upon all questions which may arise for the transaction of business, and the levying and assessing of taxes for improvements of levee." By this provision it required a vote of all the members of the respondent to levy and assess a tax (a wise provision) as said in the case cited supra by the court. See Winkleman v. Drainage Dist. No. 2, 48 N. E. 717. (6) "The commissioners have no power to create the indebtedness and then levy an assessment for the purpose of paying it. This is so because the property-owners have the right to be heard as to any act of the commissioners materially affecting the character or cost of the improvement. Badger v. Drainage Dist., 31 N. E. 170; Ahrens v. Minnie Creek Drainage District, 48 N. E. 971.

GOODE, J.—By an act passed February 27, 1855, the Egyptian Levee Company was incorporated for the purpose of reclaiming and protecting from overflow about eleven thousand acres of land in Clark county lying between the Des Moines and Fox rivers and near the Mississippi (Sess. Acts 1855, p. 73; Local Laws and Private Acts 1855, p. 281). Said company was authorized to exercise the power of eminent domain and to make and repair levees, ditches and embankments to prevent the inundation of lands within the levee district, to levy taxes to a fixed limit to pay for the construction of such protective earthworks and also taxes to keep them repaired. The original act of incorporation was amended several times by special acts prior to the adoption of the Constitution of 1875, and since then has been subject to the changes made by general laws passed in regard to overflowed lands. Most of the amendments have no bearing on this case and will not be noticed.

Section 18 of the original act is as follows:

"Said company shall have power and authority after the said levee, ditches and embankments are constructed, for the purpose of keeping the same in repair and use, to levy off of the landowners within the limits of said charter, whatever tax they may deem necessary, and not exceeding ten cents per acre per annum, the same to be assessed and collected as in the assessment and collection of taxes for the purpose of constructing said levee, ditches and embankments, and as hereinbefore provided for."

A statute was passed March 31, 1883 (Sess. Acts 1883, p. 108; Revised Statutes 1899, sec. 8370), containing the following provisions:

"1. The board of directors of any corporation which has been or may hereafter be organized for the purpose of reclaiming swamp or overflowed lands, may, when it is satisfactorily shown that the tax per acre now authorized by law to be levied for the purpose of repairing levees, ditches and embankments, is insufficient to pay the costs of such repairs, then such board

of directors shall have power and authority to levy on the land within the limits of their charter, an additional tax of fifteen cents per acre, per annum, to be paid by the owners thereof.

"2.    As the property within the limits of the existing corporations mentioned in the preceding section, is liable to suffer great injury, unless this act take effect immediately, an emergency exists; therefore this act shall take effect and be in force from and after its passage."

E. D. Parsons did work on the levees in the year 1885, asserted by appellant's counsel to have been repairs and which we will treat as such, and he received in payment a warrant which he afterwards assigned to the relator, who recovered judgment on it in 1897 for three hundred and sixty dollars and took out an execution that was returned *nulla bona.* The respondents, who are the directors of the Egyptian Levee Company, refused to levy a special tax to pay the judgment, and in October, 1898, the relator sued out an alternative writ of mandamus to compel them to take that step, but at the hearing of the cause a peremptory writ was denied and the relator appealed.

The evidence showed that both the ten and fifteen cent levies for repairs authorized by the statute were made and exhausted during 1898, prior to the bringing of this action, but that both of them had rarely been ordered in preceding years, though the relator admits both were ordered and used in paying other debts in 1885, when the work was done. His position is thus stated by counsel in their brief:

"The relator contends in reply that respondents have power and authority to levy a tax to pay his judgment for the reason that they have not as contemplated by Act of 1883, which was in force at the date of issuance of the warrant in judgment, levied a tax sufficient to pay for the repair done on the levee for which this warrant was issued. That said levy has been omitted for many years subsequent to the year 1885, the date the work was done. That under the evidence in the

case the work was done on a portion of the levee in
order to repair a portion that had washed into the river
and hence afforded no protection to the land lying
within the levee district without this necessary and
emergency work contemplated by said act, and that the
directors under their charter had and have full power
and authority to levy the tax to pay this warrant re-
duced to judgment.''

The main question propounded for solution is,
therefore, whether the directors of the levee company
can be compelled by this proceeding, begun in 1898, to
levy an assessment on the lands in the district to pay
this judgment debt, due for work done in 1885, because
either the ten or fifteen cents levy was omitted for most
of the years between 1885 and 1898?

Several intricacies of the Gordian-knot variety
were suggested by the respondents' counsel in regard
to the effect on the powers of the directors of an amend-
atory statute enacted in 1872, granting to the taxpayers
of the district the right to vote on proposed improve-
ments and assessments, which we will either untie or
cut when we have to in order to decide a case; but we
do not have to at present, so we shall pass over them.

The laws under which assessments to pay for re-
pair work must be made by the directors of the com-
pany prescribe a maximum limit of twenty-five cents
an acre, which may not be exceeded in any year,
whether the tax must be voted in every case by the
landowners or not; and as that amount had been already
collected and exhausted in the year 1898, no further
levy could be lawfully ordered to pay the relator's judg-
ment.    The limitations contained in the various statutes
under which the levee company exists and acts, exert
a restraint on its power to lay and collect taxes similar
to that exerted by our constitutional limitations on the
taxing power of counties, and should receive the same
construction; and the rule above stated is the one de-
clared in regard to the effect of constitutional and
special legislative limitations as to taxation by coun-
ties.    State ex rel. v. Macon County Court, 56 Mo. 126;

U. S. ex rel. v. Id., 99 U. S. 582; Book v. Earl, 87 Mo. 246; Barnard v. Knox County, 105 Mo. 382. The intention of the Legislature was to confine the authority of the levee company to contract for repairs in any year, inside the maximum of taxes permitted to be laid to pay for that kind of work during one year, to-wit, twenty-five cents an acre on the land lying within the district, and to prohibit the making of such extensive repairs as would run the total cost above the amount that could be thus realized; and contractors were bound to take notice of that intention as expressed in the statutes. State ex rel. v. Macon County Court, and Barnard v. Knox County, supra; Winkleman v. Drainage District, 170 Ill. 37; Ahrens v. Drainage District, 170 Ill. 262; First Nat. Bk. v. Union District No. 2, 82 Ill. App. 626.

Appellant invokes the doctrine of Sheridan v. Fleming, 93 Mo. 321, in which it was ruled that a contractor who had dug a ditch to reclaim swamp lands under contract with the county court of Polk county, and whose warrant for the work remained unpaid because the estimate of the cost of the work turned out to be too low, so that the taxes levied to defray the cost as thus estimated were inadequate to defray the actual cost, was entitled to a writ of mandamus to compel the county court to make an additional levy. But that doctrine, while sound in that case, where the tax authorized to be collected to pay for the work was not limited to the amount of the original estimate, but further levies permitted, is inapplicable to the case in hand, for here there is a limitation; the very statutes which empowered this company to contract for the repairs made by appellant's assignor, provide a limit on the amount of taxes to be assessed in any year to pay for repairs. When the amount of taxes that may be laid to pay for improvements ordered by the public authorities is unrestricted, assessments may be made to meet the cost, however large; but if it is restricted, the prescribed limit must be respected by the authorities, and all persons seeking contracts for work must take notice of the

limit and accept no work when the cost of it, added to the cost of other similar work already done, will exceed the revenues to which contractors must look for payment. State ex rel. v. Macon County Court, and U. S. ex rel. v. Id., supra.

The warrant on which the appellant obtained judgment was not shown to have been issued after the exhaustion of the repair levy of 1885 and, therefore, is not void, but represents a debt payable out of any repair fund the Egyptian Levee Company may have in excess of its current needs for any year, we think, in analogy to general county warrants (Andrew County v. Schell, 135 Mo. 31); but it would be a violation of the purpose and letter of the statutes to require a special levy in any year to meet the debt, when assessments to the full amount permitted for repairs have been already laid and exhausted, merely because in previous years full levies were not made. Otherwise, whatever debts of the company may be outstanding for years past, might be imposed on the present landowners of the district in a mass and to an amount equal to the aggregate difference between what taxes might have been raised and what actually were raised during those past years; which result manifestly the law never intended.

The judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.