### Daniel D. Healy, Receiver, Appellant, v. Defiance City Bank et al., Appellees.

### Gen. No. 16,967.

1. RECEIVERSHIPS—*when right of receiver to maintain action cannot be questioned.* Appellees who have filed no cross errors and who are asking the Appellate Court to affirm a decree granted in their favor, cannot urge that a receiver who instituted the action is not entitled to maintain the same.

2. CORPORATIONS—*status of pledged stock fraudulently issued.* Stock in a bank fraudulently issued without having been paid for is void and an innocent pledgee thereof for value acquires no greater rights than the owner of such stock had.

3. CORPORATIONS—*liability for fraudulent issuance of stock.* A bank is not liable to the purchaser or pledgee of stock from an officer of such bank who has conspired with other officers of such bank to have such stock issued to him without having been paid for.

Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed April 7, 1911. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** On February 15, 1906, Daniel D. Healy was appointed receiver of the Bank of America, which is a state bank organized under the

laws of Illinois.   His appointment was made in the suit of Kavanagh v. The Bank of America, by the Superior Court of Cook county.   He proceeded with his duties and succeeded in realizing upon the assets sufficiently to pay all the debts of the bank, and all of these debts were paid except a claim of the Jackson Trust & Savings Bank, before the commencement of these proceedings, which were brought on January 19, 1907.

It is conceded that the claim of the Jackson Bank was adjudicated in its favor by the Supreme Court (Pryor v. Bank of America, 240 Ill. 100), and that this claim has now been adjusted, so that whatever fund is in the hands of the receiver is to be distributed among those who are found to be entitled to the same as shareholders or as pledgees or assignees of shareholders.

The present proceeding was instituted by the receiver, who made as defendants to his bill all stockholders, all subscribers to stock and all pledgees and assignees of stock, and certain creditors.   Among the defendants are the City National Bank of Cairo, Enterprise Savings Bank of Cairo, Teutonia Bank & Trust Company of New Orleans, William T. Alden and Carl R. Latham, appellees herein.   The three banks claim as pledgees of stock said to belong to F. E. Creelman and W. T. Alden and C. R. Latham as assignees of stock from the said F. E. Creelman.

Among the other defendants to the proceeding were Wilton B. Martin and Joseph Beifield, appellants in two appeals now pending in this court, being general numbers 15,934 and 15,455.   The Beifield claim arises out of stock issued to J. V. Pierce, hereinafter referred to, and Martin's on account of stock issued to Abner Smith, also hereinafter referred to.

The bill was filed by the receiver, pursuant to an order from the chancellor of the Superior Court under whose instructions he was acting, and by it the receiver undertook to collect stock subscriptions or to cancel stock where collections could not be made, to settle equities among the stockholders and creditors, and

asked for a decree distributing the fund in the receiver's hands to the parties to whom it should be found it properly should be distributed.

The bill alleged that the bank was organized in the month of November, 1905, by Abner Smith, Jerome V. Pierce, and Gustav F. Sorrow; that the organization of the bank was conceived in a conspiracy; that the purpose of Smith, Pierce and Sorrow was so to organize the bank that they should have control thereof, without in reality paying anything into the bank upon their stock subscriptions; that Smith subscribed for 1,250 shares, Pierce for 125 shares, and Sorrow for 125 shares; that F. E. Creelman subscribed for 250 shares and agreed to pay therefor the sum of $50,000, the bank being organized on the basis of $250,000, divided into 2,500 shares of $100 each, each subscriber to pay $200 per share for his stock, $100 of which should go into the surplus account of the bank; that in order to deceive the Auditor of the State of Illinois the four men made fictitious payments upon their subscriptions; that Smith borrowed approximately $25,000 from the State Bank of Chicago and deposited the same to the credit of the Bank of America on December 1, 1905; that on December 4th, the day the bank opened, he drew out $15,000 of this deposit upon the note of Mary Dufficy, who was a domestic servant in his employ, and a few days later $10,000 upon another note of the same woman, both of which notes were absolutely valueless; that Sorrow paid $4,000 on his subscription, and on the day the bank opened drew it out of the bank; that Pierce deposited $20,000 on his subscription, which he procured temporarily from an uncle, and a few days after the bank opened loaned the money back to his uncle on a note, and thereby abstracted from the capital of the bank what he had paid in; that this note of the uncle has never been collected; that Creelman entered into the conspiracy with Smith, Pierce and Sorrow, and a few days before the bank opened deposited $10,000 of his subscription, and later

$40,000 in the form of a check, which it is alleged was a mere pretended and fictitious payment, Creelman being immediately paid back the $40,000; that Creelman became a stockholder of the bank at the solicitation of Pierce and Sorrow, and with the understanding that he (Creelman) should have a line of credit of $150,000, and that Creelman afterwards, by means of worthless drafts and securities, obtained from the bank over $180,000. The facts thus alleged as to the fraud practiced by the four conspirators are said by the Supreme Court to have been established in the criminal case brought against them, which case was, however, dismissed as to Creelman. People v. Smith, 239 Ill. 91.

The bill then prays that the subscribers who have not paid their subscriptions be decreed so to do, or in case of insolvency that the stock be cancelled, whether in the hands of such subscribers or of third persons as security or otherwise, so that such holders shall not participate in the assets of the bank upon the distribution thereof.

To the bill the appellees filed answers; the appellee, City National Bank of Cairo, setting up in substance that it held certificates No. 180 and No. 183 for 25 shares each, issued to and endorsed by Creelman and by him delivered to said bank as collateral security for notes aggregating $10,000, upon which Creelman was endorser, dated January 12, 1906, and discounted that day by the City National Bank; the appellee, Enterprise Savings Bank, setting up that it held certificates No. 182 and No. 221 for 25 shares each, issued to and endorsed by Creelman and by him delivered to said bank, as collateral security for notes aggregating $10,-000, upon which Creelman was endorser, dated January 12, 1906, and discounted that day by the Enterprise Savings Bank; the appellee, Teutonia Bank & Trust Company, setting up that it held certificates No. 219 and No. 220, each for 25 shares, issued by F. E. Creelman and by him assigned and delivered to it, and certificate No. 218 for 25 shares, issued to Helen

M. Creelman and by her assigned and delivered to it, and certificate No. 217 for 25 shares, issued to Mary K. Creelman and by her assigned and delivered to it, and certificate No. 216 for 25 shares, issued to Charles S. Creelman and by him assigned and delivered to said bank, all of said certificates, aggregating 125 shares, having been so assigned and delivered to and held by said Teutonia Bank & Trust Company as collateral security to a loan made to F. E. Creelman February 15, 1906, upon his promissory note of that date, for $20,000.

The appellees, William T. Allen and Carl R. Latham, set up that they purchased certificate No. 181 for 25 shares of the stock of the bank from Frank C. Patten, for value.

All of the appellees denied in their answers any knowledge or notice that the subscription of Creelman to the stock of the Bank of America was unpaid, or that the bank was insolvent or embarrassed, and alleged that they received and accepted said certificates in good faith, in the ordinary course of business, and paid full value therefor, and are entitled to the rights of holders thereof, as pledgees and owners, respectively, and to share in the funds in the receiver's hands for distribution, and denied that complainant was entitled to the relief prayed, or any part thereof.

Replication being filed to these answers the cause was referred to the master for separate hearing upon the bill of complaint, the answers of the appellees and the replications thereto; the issues and hearing thereon being thus severed from other issues as to the rights and interests of other defendants to the bill—all the stock issued to Creelman upon his subscription being held by the appellees as pledges and owners, respectively— and the only issues involved in the particular appeal now being considered grow out of Creelman's subscription to stock of the bank, and stock issued thereon.

The master reported in favor of the receiver; that

the organization of the bank was fraudulent, and that the Creelman stock, even in the hands of innocent pledgees was void for non-payment by the original stockholders, and that the same ought to be cancelled on the return of the notes or the securities, and that no claim to share in the fund in the receiver's hands yet to be distributed can properly be based on the Creelman stock.

The court entered a decree overruling the master and finding that the appellees were entitled to participate in the fund in the receiver's hands for distribution, on the basis of the Creelman stock aforesaid, and from this decree the receiver has perfected an appeal to this court.

DARROW, MASTERS & BAILEY, for appellant.

ALDEN, LATHAM & YOUNG and JOHN D. HOOD, for appellees.

MR. JUSTICE CLARK delivered the opinion of the court.

The appellees in this case insist that the receiver may not maintain this suit because, as they assert, he does not represent and cannot have adjudicated the rights of stockholders, individually as such, and may not have a decree canceling the stock, as prayed for in his bill. We think their objection comes too late. The decree of the court below is in their favor; they have filed no cross errors, and are asking the court, as we understand it, to affirm the decree so entered below. In our judgment, it would have been much better if the court, instead of authorizing the receiver to bring an independent action, had directed him to bring into the proceeding in which he was appointed all of the defendants now before the court in this proceeding, by a petition or otherwise, so that the court in the one proceeding could have entered a decree settling all rights of the parties to the fund in the hands of the receiver.

We have now before us three appeals from two different chancellors, who apparently hold diverse views as to the principle of law which should govern the court having before it the duty of the distribution of the assets.

In the present appeal it is claimed by the appellees that the evidence shows that Creelman was not a party to the so-called conspiracy of Smith, Pierce and Sorrow, but was dealing with them independently and in his own interest. The master found against the appellees on this issue, and his finding, in a measure at least, is justified by the Supreme Court in People v. Smith, *supra*. The Superior Court, however, in its decree, did not pass upon the question. The court found that the appellees, with the exception of Alden and Latham, were holders as pledgees of stock certificates which were issued on account of the Creelman subscription; that no part of the indebtedness secured by the certificates had been paid; that Messrs. Alden and Latham had purchased a certificate for 25 shares of stock issued in the name of Creelman from one Frank C. Patten, and had paid the said Patten $750 therefor; that appellees had no knowledge or notice in any manner that shares of stock of the Bank of America were not fully paid, and that each of them received and accepted the stock so assigned and delivered to them in absolute good faith and in the ordinary course of business, and that appellees are entitled to share in the distribution of the fund in the receiver's hands after the payment of the creditors in the proportion that the shares so held by them bear to the total number of shares of the bank outstanding.

We have carefully examined the record in this case, also the records in the two cases heretofore referred to, namely, the appeal of Martin and the appeal of Beifield, the arguments in the three appeals being heard together, and find that the fraud and conspiracy charged were so fully established as to the stock issued to Smith, Pierce, Sorrow and Creelman as to render

such stock, at least in the hands of these four men and each of them, absolutely void.

The question therefore now turns upon the effect such finding has upon persons claiming under them as pledgees, assignees or otherwise. In dealing with this question, we treat the matter as we think it would have to be treated if, instead of bringing an independent suit, the receiver had brought into the case in which he was appointed, all of these parties defendant, by a petition in which he sought the direction of the court as to how he should distribute the assets in his hands. As receiver, he is acting for all parties in interest, and it is his duty to distribute the assets only among the *bona fide* stockholders, and before the final distribution he must necessarily ascertain who such *bona fide* stockholders are.

The stock certificates bore upon them the language ordinarily used—"Transferable only on the books of said bank in person or by attorney on the surrender of this certificate."

The master found as follows: "It appears from the evidence that the Bank of America kept a stock transfer book and that none of the stock herein in question was ever transferred on the books of the bank to the claimants herein; nor does any application for such transfer appear to have been made at any time by any of the said claimants."

The Supreme Court of this state, in Rice v. Gilbert, 173 Ill. 348, 352, stated:

"Authorities may be found sustaining the position that a delivery of a certificate of stock as security, endorsed or with power of attorney, but not transferred on the books of the corporation, is not valid against lien creditors of the pledgor, even under the language of the statute; but the current of decisions in the commercial states of the Union is to make shares of stock as nearly negotiable as possible, and we are of the opinion that such was the intention of the Legislature in enacting the amendment to Section 52, *supra*. The

phrase 'sold or pledged' should not receive a construction which will include a portion of stock transaction coming under the head of collateral securities, but not others, where there has been a delivery of the stock certificate.''

In the same case the court held also:

''As between the parties to the pledge and the corporation a different rule prevails, and until the transfer is made on the books of the company a holder of a certificate of stock cannot assert a legal title against the company.''

The case of Rice v. Gilbert arose as between an execution creditor of the pledgor and the pledgee of stock. The case before us is as to the relative rights of stockholders whose stock has been paid for in full—indeed paid for at twice its par value—and creditors and assignees of a man to whom stock was issued in pursuance of a conspiracy and on which but a portion of the par value was actually paid. Creelman, if he had continued to hold the stock, would certainly not have been permitted to share in the funds to be distributed by the receiver, because the stock in his hands was void *ab initio*. The stock continues to stand in his name or in the name of members of his family to whom he caused it to be issued, and by decree of court in a proceeding brought against him the stock was ordered cancelled. Appellees, however, were not parties to that suit, and it is not claimed by the receiver that the decision in that case is binding upon the appellees.

It is urged by appellees that, because the law of this state provides that before stock shall be issued by a bank it shall have been fully paid for, the purchasers or pledgees taking stock from persons to whom it has been issued have the right to assume that the stock is valid and fully paid. This contention, which under ordinary circumstances might be well founded, leaves out of the question the fraud which was perpetrated upon the bank by the officers of the bank and Creelman in issuing the stock. Fraud is said to vitiate every-

thing. If the certificates of stock in the hands of Creelman were void because of the fraud which he had committed upon the corporation, can they be given vitality by the transfer of them by Creelman to others? We think not.

It is insisted that as the officers of the bank wrongfully issued the stock, a purchaser or pledgee has a claim against the corporation in an action of tort. Among other cases cited to us in support of this proposition we are furnished the following: N. Y. & N. H. R. R. Co. v. Schuyler, 34 N. Y. 30; Bruff v. Mali, 36 N. Y. 200; Kisterbock's Appeal, 127 Pa. St. 601; Tome v. Parkersburg Branch R. R. Co., 39 Md. 36.

It is claimed that this right of action extends even to the purchaser from or pledgee of the wrong-doing officer of the bank, and in one of the appeals before us, namely, that of Joseph Beifeld, heretofore referred to, the court is asked to decree that the bank is indebted to Beifeld in the amount due him because of such tortious act, and that the receiver should be directed to pay out of the funds in his hands the amount so found. If such is the law, then all of the purchasers from the four conspirators hereinbefore referred to, and the creditors of such conspirators who have the stock issued to the conspirators as collateral to notes, should have similar decrees. The anomalous result then follows that the innocent stockholders who paid $200 per share for their stock direct to the bank get nothing, and the comparatively small amount now in the hands of the receiver would be paid to the purchasers from and pledgees of the four guilty conspirators.

"Certificates of stock are not negotiable instruments. They have sometimes been said to have a quasi-negotiability, but this phraseology throws but little light upon the real character of the transferability of stock." 1 Cook on Corporations (5th edition) 52.

"It is laid down in numerous cases that stock certificates are not negotiable either in form or character, though as heretofore seen they are often said to be

quasi-negotiable. The general consequence of this doctrine is that whoever takes them takes them subject to the equities and burdens which attend them, as in the case of the purchase of any other non-negotiable paper and that, although ignorant of such equities and burdens, his ignorance does not relieve the paper therefrom or enable him to hold it discharged therefrom." 2 Thompson on Corporations, Sec. 2353.

In First National Bank v. Drew, 191 Ill. 186, it is said:

"The vendor of a chose in action, by its sale and transfer to the vendee, and the receipt of the consideration therefor, impliedly warrants that it is genuine and not a forged instrument, and that he is the owner thereof and authorized to transfer the title thereto. Subject to these exceptions only, the doctrine of *caveat emptor* applies to the purchaser thereof, and if the vendee desires a further warranty he should exact of the vendor a special guaranty before he pays his money, and not rely upon the warranty raised by implication of law."

The appellant insists that the record shows that the appellees knew at the time they acquired the stock in pledge or purchased it, that the issuance of it was tainted with fraud. He points to the fact that at the time the appellees Alden and Latham bought the shares which they hold the receiver was already in possession, appointed under a bill charging conspiracy and fraud, and that Messrs. Alden and Latham are shown by the record to have known of this condition of things.

Appellant also urges that the other appellees took the shares which they hold under circumstances which at least should have put them upon inquiry.

Without commenting further upon this claim, we hold that the appellees and others who acquired their stock from Creelman, Smith, Sorrow or Pierce should not be allowed to participate in the distribution of the fund in the hands of the receiver.

The decree will be reversed, with the suggestion that the Superior Court direct that this case be consolidated with the case of Kavanagh v. Bank of America, in which the receiver was appointed, and that a decree be entered distributing the assets in accordance with the principles laid down in this opinion.

*Decree reversed and cause remanded.*