GILLETTE *v.* CITY OF DENVER.

BROWN *v.* SAME.

*(Circuit Court, D. Colorado. October 16, 1884.)*

1. SEWER ASSESSMENTS—ACCORDING TO AREA.

Assessments for sewer purposes, levied according to area and regardless of improvements, is a valid mode of assessment under the Colorado constitution.

2. SAME—NOTICE—WHEN ASSESSMENT IS DETERMINED BY A MERE MATHEMATICAL COMPUTATION NOTICE IS UNNECESSARY—DUE PROCESS OF LAW.

Act of the legislature, Colorado, of February 19, 1879, amending the charter of the city of Denver, provides for the construction of sewers and the levy of assessments therefor *according to area* and regardless of improvements, on the petition of a majority of the property holders resident in any sewer district, or upon the recommendation of the board of health. The act also provides that, during the progress of the work, all persons interested shall have an opportunity to object to the materials used, the manner in which the work is done, or any supposed violation of the contract. *Held*, that the levy of the assessment being a mere mathematical computation, and as to all prior proceedings full notice is provided for, it is unnecessary that the act should provide an opportunity for lot-owners to be heard on the assessments after they are levied, and that making such assessments a fixed charge against the lots, without notice or an opportunity to be heard, is not depriving the lot-owners of their property without "due process of law."

3. SAME—EQUITY WILL NOT ENJOIN COLLECTION OF TAX ON THE GROUND OF IRREGULARITY OR ILLEGALITY.

In an action brought to restrain sale of land to pay delinquent tax or assessment, equity will not grant an injunction, restraining collection of tax or

assessment on the ground of irregularities in the levy or illegality of the tax or assessment.

4. JURISDICTION OF FEDERAL COURT—DUE PROCESS OF LAW.

Jurisdiction of federal court cannot be invoked on the ground that the act under which the proceedings are had violates the constitution of the state, unless it also violates some provision of the federal constitution.

Petition for Injunction. The facts are stated in the opinion.

*John Q. Charles, James H. Brown,* and *John W. Webster,* for complainants.

*Frank Tilford, Henry T. Rogers,* and *Lucius M. Cuthbert,* for defendents.

BREWER, J., (*orally.*) In the case No. 1,217, *Gillette* v. *City of Denver,* a bill has been filed to enjoin the collection of certain sidewalk and sewerage taxes. So far as the sidewalk taxes are concerned, the question as to them has been settled by the supreme court of the state, and is not now pressed for consideration. The special demurrer runs only to the sewerage tax. It is claimed by the complainants that this tax is void, because the act of the legislature under which the proceedings are had is unconstitutional in two respects: *First,* it provides for an assessment of the tax upon the property within the district according to the area, ignoring all improvements placed upon it, and not according to the value of the property; and the question involved is whether it is within the power of the legislature, under your constitution, to assess these special taxes upon property according to the area. In the case which went to the supreme court of your state, involving the sidewalk tax, where the act provides for collecting the tax according to the frontage, the act was sustained. I am unable to see any distinction in principle between the two. If you can collect a sidewalk tax by a levy upon the adjacent lots according to their frontage, which, of course, ignores all question of value or improvements, I can see no reason why you can not collect a sewerage tax upon property according to the area. In both cases all matter of improvements, all question of value, is ignored; and so, without discussing the question, it seems to me, under the decision of your supreme court, that that objection must be overruled. The second objection is that under the act there is no such notice provided for as will create "due process of law;" and in reference to the sidewalk ordinance and the proceedings thereunder, the supreme court have held that there was not "due process of law," and have set aside those taxes. A distinction is sought to be made between sidewalk proceedings and those in reference to sewerage. What is "due process of law," is one of those questions which it is more easy to ask than it is to answer. The supreme court of the United States have very carefully said that there is as yet no full and definite answer to the question. In the case of *Davidson* v. *New Orleans,* 96 U. S. 97, the court, by Mr. Justice MILLER, uses this language:

"But apart from the imminent risk of a failure to give any definition which would be at once perspicuous, comprehensive, and satisfactory, there is wisdom, we think, in the ascertaining of the intent and application of such an important phrase in the federal constitution, by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded. * * * As contributing, to some extent, to this mode of determining what class of cases do not fall within its provision, we lay down the following proposition as applicable to the case before us: That whenever, by the laws of a state or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law."

And in a subsequent case, (*Hagar* v. *Reclamation Dist.* 111 U. S. 708; S. C. 4 Sup. Ct. Rep. 663,) the court, by Mr. Justice FIELD, uses this language, after discussing more generally what "due process of law" may be:

"But where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax, and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments."

As stated by Mr. Justice BRADLEY in his concurring opinion in *Davidson* v. *New Orleans:*

"In judging what is 'due process of law,' respect must be had to the cause and object of the taking,—whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law;' but if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.' "

And again:

"Of the different kinds of taxes which the state may impose, there is a vast number of which, from their nature, no notice can be given to the tax-payer, nor would notice be of any possible advantage to him, such as poll-taxes, license taxes, (not dependent upon the extent of his business,) and generally specific taxes on things or persons or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter."

And then goes on to speak of where a tax is levied on property, not specifically, but according to its value, to be ascertained by assessors appointed for that purpose, upon such evidence as they may obtain, and holds that a different principle comes in. Now, in this case, the tax is levied by the area; no question of value, no matter of judgment,—a mere *mathematical calculation;* and of what earthly profit could it be to a tax-payer to have notice of that calculation? He can make it

himself. He cannot correct by testimony the judgment of anybody; it is as exact and settled as anything can be. In the proceedings to assess this tax and to do the work, there are three steps: *First,* there is the making of the contract for the building of the sewer; *second,* there is the building of the sewer, the performing of the work; and, *third,* the mere mathematical calculation,—the apportionment of the cost. As to the latter, no notice can be required, because notice would be of no avail; as to the first, the statute provides that the city council may not act except upon the petition of a majority of the property holders, or a recommendation of the board of health; it acts only by ordinance; the contract can be let only on advertisement. Every citizen is bound to take notice of the ordinances of the city; so that anterior to the making of the contract he has all the notice which can be required; and the statute also provides, in reference to the doing of the work, that while the work is proceeding, on the complaint of any citizen or tax-payer that any public work is being done contrary to contract, or the work or material used is imperfect or different from what was stipulated to be furnished or done, the council shall examine into the complaint, may appoint three commissioners, etc.; so that in reference to the making of the contract the performing of the contract, there is provision for notice; and as to the mere apportionment of the tax, it is one of those things as to which in the nature of things no notice can be required, because no notice would be of value. So that, within the definitions laid down in these cases in the supreme court of the United States, it seems to me that it must be held that there was no violation in that statute of that provision of the federal constitution forbidding the taking of property without "due process of law."

But that only advances us one step. It is charged in the bill and on demurrer, it must be taken to be true, that there were irregularities in the exercise of this power; that tax-warrants have been issued for a sum largely in excess of the cost of the sewer; and this statute provides that the cost of the sewer shall be charged upon the lots in dispute; and the question now arises: What is the duty of the court, in this equitable case, where work is irregularly done, defects appear in the proceedings of the council, and an excess in the amount of the warrants? In reference to that, this is the rule laid down, in a very carefully considered case, by the supreme court on these general question, in the *State Railroad Tax Cases,* that went up from Illinois. 92 U. S. 575. (This, it must be borne in mind, is an equitable action to restrain the collection of the entire tax levied upon these lots.) In the syllabus it is stated:

"While this court does not lay down any absolute rule limiting the course of a court of equity in restraining the collection of taxes, it declares that it is essential that every case be brought within some of the recognized rules of equity jurisdiction, and that neither illegality nor irregularity in the proceedings, nor error or excess in the valuation, nor the hardship or injustice of the

law, provided it be constitutional, nor any grievance which can be remedied by a suit at law either before or after the payment of the tax, will authorize an injunction against its collection."

And in the fourth proposition:

"No injunction, preliminary or final, can be granted to stay collection of taxes until it is shown that all the taxes conceded to be due, or which the court can see ought to be paid, or which can be shown to be due by affidavits, have been paid or tendered without demanding a receipt in full."

And in order that it may be seen that that is not the language of the reporter, and an improper deduction from the opinion, I turn to the language of the opinion itself, where, on page 613, Judge MILLER says:

"It has been repeatedly decided that neither the mere illegality of the tax complained of, nor its injustice nor irregularity, of themselves, give the right to an injunction in a court of equity." [Quoting half a dozen cases. And then further:] "But there is another principle of equitable jurisprudence which forbids in these cases the interference of a court of chancery in favor of complainants. It is that universal rule which requires that he who seeks equity at the hands of the court must first do equity." "It is a profitable thing for corporations or individuals, whose taxes are very large, to obtain a preliminary injunction as to all their taxes, contest the case through several years' litigation, and when, in the end, it is found that but a small part of the tax should be permanently enjoined, submit to pay the balance. This is not equity. It is in direct violation of the first principles of equity jurisdiction. It is not sufficient to say in the bill that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The state is not to be thus tied up as to that of which there is no contest by lumping it with that which is really contested. If the proper officer refuses to receive a part of the tax, it must be tendered, and tendered without the condition annexed of a receipt in full for all the taxes assessed." "We are satisfied that an observance of this principle would prevent the larger part of suits for restraining collection of taxes which now come into the courts. *We lay it down with unanimity as a rule to govern the courts of the United States in their action in such cases.*"

Applying that rule here, it is alleged in the bill that these sewers had been constructed, that their cost was a certain sum, that the area within the district is also of a certain extent. Now, conceding (and it must be under the allegations of the bill) that there were irregularities in the proceedings sufficient in an action at law to defeat the title transferred by a conveyance, yet the complainants stand in the attitude of saying to this city: "You shall not collect a dollar of the cost of this sewer, because you have tried to collect more than you were entitled to, because of some irregularity in the proceedings to collect that tax; while we admit that the sewer has been built, that it really cost so much, and that, as must be conceded, under the provisions of statute and the ordinance our property has been benefited to that extent." It seems to me that equity will not interfere in such a case. There is no allegation in the bill of payment or tender. I think the bill in respect to that matter is there-

fore defective, and demurrer to that portion of the bill which seeks to restrain the collection of the sewerage taxes will be sustained.

In the case of *Brown* v. *City of Denver*, 3 Colo. 169, which presents the same questions substantially, with this additional fact: The plaintiff is a citizen of Colorado, and comes into this court invoking the jurisdiction of the federal courts, on the ground that his property is being taken without "due process of law," in violation of the provision of the fourteenth amendment. I do not think it is necessary to say any more than I have said. It does not seem to me that under the allegations of the bill it can be held that there was a lack of due process of law, and I do not think that a citizen of the state can come into the federal courts and litigate with a citizen of the state any other than a federal question. So I have not considered several questions made by counsel as to supposed infractions of other portions of the constitution.

The special plea to the jurisdiction will be sustained.