WILLIAM WINKELMANN

*v.*

THE MOREDOCK AND IVY LANDING DRAINAGE DISTRICT.

*Opinion filed November 8, 1897—Rehearing denied December 9, 1897.*

1. DRAINAGE—*commissioners cannot create indebtedness in advance of assessment.* Levee and ditch commissioners have no power to create an indebtedness in advance and then levy an assessment for the purpose of meeting such indebtedness.

2. SAME—*power of commissioners to levy assessments under the constitution.* The power of levee and ditch commissioners to levy assessments under section 31 of article 4 of the constitution is confined to assessments for the construction of levees, drains and ditches, and for the repair of those already constructed; and the aggregate amount of all assessments cannot exceed benefits.

3. SAME—*commissioners cannot levy assessment to pay "outstanding" liabilities.* An assessment by levee and ditch commissioners to pay "outstanding obligations of the district" cannot be sustained where there is nothing in the record to show the amount, nature and character of such liabilities.

APPEAL from the County Court of Monroe county; the Hon. WILLIAM P. EARLY, Judge, presiding.

This is an appeal from a judgment of the county court of Monroe county, confirming an assessment roll made by the three commissioners of the Moredock and Ivy Landing Drainage District No. 1 in said county. The petitioners filed their petition in the county clerk's office of said county on the 15th day of August, 1895, alleging, that the said district was duly organized for drainage purposes, giving the boundaries thereof, and representing that the ditch theretofore dug in said district had been of great benefit to the lands therein, but that, by reason of the inability of the petitioners to collect a large portion of the assessments and repair taxes theretofore levied against the lands therein, they were unable to keep the ditches free from drift-wood and dirt, so that the ditches became filled up and would not drain the lands; and further alleging, that, in order to drain said lands the boundaries

of which are given in the petition, it will be necessary to do certain work and dig a certain ditch. The petition sets forth that, when the proposed work shall have been done, the ditches will drain the lands in the district. With the petition are filed a plat and profile, and an estimate of the cost of the proposed work, and an itemized statement of accounts, showing the moneys received and the manner in which such moneys have been expended. The petition further represents, that on July 17, 1883, an assessment was made for drainage purposes against certain described lands, payable in installments in 1884, 1885, 1886, 1887 and 1888, and that repair taxes were regularly levied against said premises payable in 1885, 1886 and 1888, and that certain amounts remained unpaid against said lands on account of said assessment, repair taxes and interest. The petition alleges, as to some of the lands upon which assessments remained unpaid, that they were therein wrongly described by mistake. The petition further represents, that there are outstanding liabilities of the district, amounting to $25,840.59; that the commissioners have no funds to pay the same, except said taxes and assessments levied against said lands as aforesaid, amounting to $........; that the owners of the delinquent lands claim, that the taxes and assessments so levied against them are void by reason of mistakes in describing the same, want of proper notice to owners thereof, and other irregularities of proceeding not affecting the merits of said taxes and assessments; that, by reason thereof, the commissioners have been unable to collect any part of said taxes and assessment. The petition further represents, that an assessment of $51,340.59 is necessary to be levied upon the lands described in the petition, and upon all the lands in the district, $25,500.00 of which is needed to complete said work, and $25,840.59 of which is needed to pay the outstanding liabilities of said district. The petition prays, that the assessment may be made accordingly, and that, in making the same,

said prior assessment against said delinquent lands be not lost to the district, but that the same may be considered and included in said assessment.

The appellant and three others answered the petition, denying substantially all the allegations thereof.

On December 12, 1895, the county court ordered, that an additional assessment of $51,340.59 be levied upon the lands in said district, as prayed for in said petition, and that the descriptions of lands assessed, which were imperfect or inaccurate, be corrected, and that the assessment be made against the lands by proper descriptions. The appellant asked, that a jury might be sworn to make the assessment; but it was ordered, that the commissioners of the district make the assessment in lieu of a jury, and that the commissioners, in making the same, consider the prior assessments, which are void and unpaid as set forth in the petition, and that they may include the same or any part thereof with the assessment ordered. Thereupon the appellant filed objections to the confirmation of the assessment as to the lands therein described belonging to him. Such of these objections as are material to the case are mentioned in the opinion. The objections were heard by the county court, and evidence was introduced upon the issues formed. The court overruled the objections, and confirmed the assessment roll as above stated.

JOSEPH W. RICKERT, and WILLIAM WINKELMANN, for appellant.

TRAVOUS & WARNOCK, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The former assessment, made on July 17, 1883, by the commissioners of the district, amounted to more than $41,000.00, and is the same assessment, which is referred to and more particularly described in the cases of *Gauen*

v. *Drainage District,* 131 Ill. 446, and *People* v. *Rickert,* 159
id. 496.    No new assessment has been made since 1883,
but a repair tax has been assessed since that time.    The
prior assessment of 1883 and the repair taxes together
amount to $42,579.08.   The record shows, that, of the lat-
ter amount, $32,270.97 has been collected and expended;
and that, besides said amount, $4645.82 has been borrowed.
Thus the total amount received is $36,916.79.   It thus ap-
pears, that $10,308.11 of the original assessment of 1883
remains uncollected.    The present assessment, which
is additional to the assessment of 1883, and amounts to
$51,340.59, consists of two amounts, to-wit: the sum of
$25,500.00, which is alleged in the petition to be needed
to complete said work, and the sum of $25,840.59, which
is alleged in the petition to be needed to pay the outstand-
ing liabilities of said district.

We are unable to find any authority in any of the
drainage district acts, authorizing the levy of an addi-
tional assessment for the purpose of paying the outstand-
ing liabilities of the district.    This petition is filed under
section 37 of the act of May 29, 1879, in regard to drain-
age districts.  (2 Starr & Cur. Stat.—2d ed.—sec. 37, chap.
42, p. 1519).   Section 37 provides, that "assessments from
time to time may be levied on the land within any dis-
trict, when it shall appear to the court, that the previous
assessment or assessments have been expended or are
inadequate to complete such work, or are necessary for
maintenance and repair, or when it shall become neces-
sary for the construction of any additional work, or the
completion of any work already commenced within any
drainage district to insure the protection or drainage of
the lands in said district, under the order and directions of
the court,   *   *   *   on the petition of the commissioners,
accompanied by an itemized statement of accounts made
by the commissioners, under oath, showing the moneys
received by the district and the manner in which they
have been expended, together with plats, profiles of such

additional work and estimated cost of the same." So far as the sum of $25,500.00, included in the assessment, is concerned, the assessment of that amount may be, and is conceded to be, justified by the terms of section 37. It is true that section 18 authorizes the inclusion of the prior assessment in a new assessment against the lands when such prior assessment is void and unpaid on account of some mistake or omission not affecting the merits of the assessment. There is nothing, however, to justify the assessment for the whole of the sum of $25,840.59, alleged to be the amount of the outstanding liabilities of the district. Even if $10,308.11, the amount remaining unpaid upon the original assessment, be regarded as a part of the sum of $25,840.59, and be taken out of the same, there would still remain the sum of $15,532.48, as representing amount of alleged outstanding liabilities of the district.

We discover nothing in the record which explains the nature of these liabilities. The only testimony upon the subject, to which our attention has been called, is that of one of the commissioners, named Jacob Maeys, who says: "I was one of the commissioners at the organization; I know some of the creditors of this district; the district owes me $1500.00; and Mrs. Kahn about $1600.00; the Rices $16.00; Mette & Canne I do not know just how much; Nasse & Fink told me they had $5000.00 on judgment; I do not know that I can point out anybody else; I am the owner of about four hundred acres of land in this district." According to the testimony of this witness, the indebtedness amounts, so far as he gives any definite information on the subject at all, to about $8116.00. And yet the assessment is levied for more than $15,000.00, considered upon the basis of a deduction of the unpaid part of the previous assessment. If, under any circumstances, an assessment can be made for the purpose of paying outstanding liabilities, it should not be made where the proof as to the amount and character of such liabilities is so indefinite, as it is in this record.

But, aside from the indefiniteness as to nature and amount thus referred to, the statute seems to provide a particular mode, in which alone the district is authorized to incur any indebtedness. Section 36 provides, that the commissioners may do all acts that may be necessary in and about the surveying, laying, constructing, repairing, altering, enlarging, cleaning, protecting and maintaining any drain, ditch, levee or other work for which they have been appointed, including all necessary embankments, protections, dams and side drains, clearing out and removing obstructions from natural or artificial channels or streams within or beyond the limits of the drainage district, procuring or purchasing riparian rights by agreement with the owners thereof; and it, at the same time, provides that the commissioners "may use any money in their hands arising from assessments for that purpose." By section 36 the commissioners are thus limited to the use of money in their hands, arising from assessments, for the purpose of accomplishing the objects therein mentioned. Section 37 also provides, that the commissioners may use money, arising from the collection of assessments, or coming into their hands as such commissioners, for the purpose of compromising suits and controversies arising under the act, and in the employment of all necessary agents and attorneys in organizing the district, and for conducting other proceedings in law or equity for the same, and for the purpose of constructing or repairing or maintaining any ditch, ditches, etc., within the district, or outside of the district, necessary for the protection of the lands and complete drainage of the same within the district.    Here, again, the limitation in the use of money is to such money as arises from the collection of assessments. Section 38 provides, that the commissioners may borrow money, not exceeding ninety per cent of the amount of assessment unpaid at the time of borrowing, for the construction of any work which they shall be authorized to construct, or for the payment of any in-

debtedness they may have lawfully incurred under the provisions of the act.

These provisions of the act clearly indicate, that the commissioners have no power to contract debts over and above the amount of the assessment. According to the allegations of the present petition, the indebtedness, for which it is sought to levy the assessment, largely exceeds the whole amount of the original assessment of 1883, and, by consequence, exceeds the amount of the unpaid portion of said former assessment. The commissioners have no power to create the indebtedness in advance, and then levy an assessment for the purpose of meeting it. This is so, because the property owners have a right to be heard as to any act of the commissioners materially affecting the character or extent or cost of the improvement. (*Badger* v. *Inlet Drainage District,* 141 Ill. 540). The prohibition against the contracting of the indebtedness before the making of the assessment to pay it is further apparent from the fact, that the only mode indicated in the statute, by which an indebtedness may be created, is the borrowing of a certain percentage of the amount of assessment unpaid at the time of borrowing. Necessarily, therefore, the assessment precedes the contracting of the indebtedness. To create an indebtedness the means provided by the statute are the only means which can be resorted to. Inasmuch, therefore, as the provisions of the statute imply a want of power in drainage districts to create debts in excess of assessments or funds on hand, at least $15,532.48 of the $25,840.59, included in this assesment, can by no possibility be a lien on any of the lands in the district, and hence cannot be enforced against appellant's land. (*Comrs. of Havana Township* v. *Kelsey,* 120 Ill. 482).

Section 31 of article 4 of the constitution provides, that the corporate authorities of these drainage districts may be vested by the legislature "with power to construct and maintain levees, drains and ditches, and keep in repair all drains, ditches and levees heretofore constructed

under the law of this State, by special assessment upon the property benefited thereby." Under this constitutional provision, the aggregate amount of all assessments, including the original assessment and all subsequent ones, must not exceed the benefits to the property assessed. (*Comrs. of Havana Township* v. *Kelsey, supra*). Not only is this so, but no special assessment can be levied by such a drainage district for any other purpose than for the purpose of constructing and maintaining levees, drains and ditches and keeping in repair all drains, ditches and levees already constructed. It does not appear, that an assessment levied for the purpose of paying the outstanding liabilities of a district, without any definite information as to the amount, nature and character of such liabilities, has in view an object, which comes within the limited purpose specified in the constitution.

For the reasons stated we are of the opinion, that the judgment of the court below, confirming the present assessment, was erroneous. Accordingly the judgment of the county court is reversed and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*