(No. 5823. July 6, 1932.)

C. A. WALKER, Appellant, v. E. V. HUGHES, S. P. HEMPHILL and BERT NOYEN, as Commissioners of Drainage District No. 5 of Benewah County, State of Idaho, and Their Successors in Interest, C. W. LEAF, as Clerk of the District Court and *Ex-officio* Auditor of Benewah County, State of Idaho, and IRA G. MURPHY, County Treasurer and *Ex-officio* Tax Collector of Benewah County, State of Idaho, Respondents.

[13 Pac. (2d) 249.]

Wm. D. Keeton, for Appellant.

N. D. Wernette, for Respondents.

BUDGE, J.—Appellant brought this action to enjoin the collection of and cancel certain assessments levied by Drainage District No. 5 of Benewah county upon the ground that the same had not been approved by the district court and were illegal and void. The principal defense pleaded and relied upon by respondents was estoppel. The cause was tried by the court, sitting without a jury. Findings of fact and conclusions of law were made and filed and

judgment was entered in favor of respondents, from which judgment this appeal is taken.

Thirty-two assignments of error are specified by appellant, but he concedes that the same present but two questions, namely: (1) Is his land liable for expenditures in excess of those authorized by the district court, and (2) Is he estopped to question the legality of said assessments. Appellant has presented the case upon these two questions and we shall dispose of it in like manner.

The record discloses the following facts: Drainage District No. 5 of Benewah county was organized September 26, 1925, and included within its boundaries 240.43 acres, 68.93 acres of which have been owned by appellant since November 5, 1925. The remaining acreage is owned by fourteen individuals. Prior to the time the land within the district was drained all of such land, including that acquired by appellant, was low, swampy and marshy ground and practically valueless. Before the organization of the district an attempt had been made to drain these lands by placing a dike around the same, but the dike was never completed and at the time the work was undertaken by the district had washed out in a number of places and was valueless for the purpose intended. After and by reason of successful diking and draining by the district the land was converted into profitable agricultural land of the value of from $200 to $250 per acre. Prior to November 5, 1925, on which date appellant purchased his land, appellant went over the old dike and made a thorough investigation of the land he was considering purchasing, with particular reference to the physical condition thereof and the surrounding lands, the work and construction necessary to rebuild and complete the old dike and the cost thereof, also the necessity for and cost of an adequate pumping system and equipment to properly drain the lands within the district and make the same valuable for agricultural purposes, and also the probable cost of upkeep and maintenance of such project. Before the commencement of such construction appellant was informed and knew that the cost of reconstruction and rebuilding

of the old dike, including incidentals, and costs of proceedings for organization of the district would be approximately $3,726.45, and that only $3,500 thereof would be available for work on the dike, and that no funds would be available for the purchase of pumping equipment. Appellant expressed himself as satisfied with the work to be done and the cost thereof and was willing to have it done and to pay his proportionate part and have his lands assessed therefor. Appellant resided at St. Maries, the county seat of Benewah county, a short distance from the lands in the district, and at all times had convenient access to the records of the district court and of the board of said district.

In December, 1925, the board of commissioners of the district presented and filed in the district court their report containing, among other things, an original assessment of benefits against the various tracts of land within the district, aggregating $3,726.45, that amount being estimated by said board in its report as the cost of the proposed work in the district. Also in said report the cost of upkeep and repairs was estimated at $500 per year. No report, other than that above referred to, has ever been submitted to the district court for confirmation. On January 7, 1926, the district court made its order confirming the report of the board and in such order found the estimated cost of proposed work to be $3,726.45 and that the cost of upkeep and repair after the work was completed would be approximately $500 per year. In said order the court approved the assessment-roll contained in said report and assessed the various tracts of land within the district at the rate of $15 per acre. The assessment against appellant's lands amounted to $1,033.95. Thereafter, pursuant to said order and by proper proceedings the assessment was duly entered upon the tax rolls of the county against the lands within the district. After the order of confirmation was made the land owners in the district agreed that instead of issuing bonds they would issue warrants to the amount necessary for said improvements and for the upkeep and repair thereof. On January 15, 1926, in order that the work could be done and

paid for by warrants payable at the local banks, appellant and four other land owners in the district entered into a written agreement with the First National Bank and the Lumbermen's State Bank & Trust Company, both of St. Maries, whereby they agreed if said banks would cash the warrants of said district in a sum not exceeding $4,000 "for the purpose of raising, strengthening, repairing or altering the dike" in said district, that they would waive all question as to the illegality of the warrants; that $3 per acre might be levied against the land to take up outstanding warrants; that $3 per acre might be levied against the land for subsequent years for like purpose; that they would not contest such levies; that they would pay their proportionate part apportioned on acreage owned by them in said district; that the warrants would be paid not later than January, 1931; that they would guarantee their payment and if not paid would be jointly and severally liable therefor. The work of constructing the dike then proceeded and when the same was completed the available funds had been exhausted. Each year it was necessary to pump out the water that accumulated on the inside of the dike, which varies each year according to weather conditions and moisture, in order that the land could be used for agricultural purposes, and in 1926 and 1927 this was done by means of a pump operated by tractors. In 1927 there was exceptionally high water throughout the district, which continued for a long period of time. At that time the newly constructed dike was comparatively fresh and green and was endangered by the high water, and its breaking would have destroyed the work done and would have ruined the land for farming purposes for that year and possibly other years. As a result of the high water it became necessary to commence pumping early in the season and to continue for a long period of time. It would have been impossible for appellant to have planted and harvested a crop on his land in 1927 if such pumping had not been done. It was found that the sum of $500 approved by the court for annual upkeep and repair was entirely inadequate and insufficient for such purposes and

such amount was exhausted each year before the upkeep, repairs and pumping necessary for the protection of the land within the district and the making of such land fit for profitable agricultural purposes contemplated in the organization of the district, were completed. This deficiency was known to the land owners in said district and the commissioners were requested and encouraged by appellant and other land owners to spend whatever was necessary, in excess of $500 per year, for the necessary upkeep, repairs and pumping, and as a result the commissioners expended for such purposes considerably in excess of $500 per year. During the high water of 1927 appellant and his agents had full knowledge of conditions, including finances and pumping facilities. Appellant's agents requested and demanded of the commissioners that the pumping be continued, with the result that after a long period of continuous pumping the water was removed from the lands in the district and appellant and other land owners were thus enabled to plant and harvest a large crop in 1927, at a total cost in that year for pumping of $1,878.28, appellant's crop being in value far in excess of his proportion of the expense of pumping. The high water in 1927 demonstrated that the pumping system then in use was both inadequate and expensive, which was known to appellant. At a meeting of the land owners, held March 14, 1927, at which appellant was present, the purchase and cost of an adequate pump were considered and the commissioners were authorized to purchase a new pump, which, however, was not delivered until that fall. Appellant encouraged and urged the commissioners to make such purchase. The cost and installation of the pump amounted to $643.57, of which appellant was advised, and the purchase was made with his consent and approval and without objection on his part. Discussion was later had with appellant by various land owners in the district and its commissioners with respect to purchasing and installing an adequate electric power plant and power line for the operation of the pump; and appellant and other land owners requested and demanded of the commissioners that they

make such purchase and installation. At a meeting of the commissioners held October 14, 1927, a contract was let for the construction of the electric power plant and power line at a cost of $1,200, of which appellant was advised. Appellant also knew that the entire sum provided for construction of proposed works had been used for the rebuilding of the old dike, and that no funds were available for the purchase and installation of the power plant and power line. On October 15, 1927, appellant and eight other land owners in the district entered into a written agreement with the two banks above referred to, whereby the former agreed that if the banks would cash the warrants of the drainage district in a sum not exceeding $1,200 "for the purpose of installing electric power for pumping purposes" they would waive objections as to the illegality of the warrants; would not contest the same; would cause a sufficient levy to be made to take up the warrants within two years; would not contest the levy; would pay their proportionate part apportioned on acreage owned by them in the district; and that they would be jointly and severally liable for the payment of such warrants as were not paid by January, 1930, not exceeding $1,200. The actual cost of the plant and power line was $1,395.36, the difference between that amount and the contract price representing the cost of rebuilding of the powerhouse and incidentals not included in the contract.

With the knowledge, acquiescence and consent of appellant and other land owners in the district the commissioners seeded the dike to protect it and prevent injury from high water, at a cost of $71.48, appellant and other land owners being informed but making no objection.

In 1927 labor and services in connection with the pumping were rendered by a tenant on appellant's land and a warrant for $525 was issued to the tenant in payment therefor. This warrant was indorsed and delivered by the tenant to appellant in payment of rent and was cashed by appellant.

Between June 4, 1926, and January 1, 1930, the commissioners issued warrants in payment of the construction work, equipment and improvements above referred to and annual

upkeep, repairs and pumping totaling $9,299.92. On August 15, 1928, at a regular meeting of the board of commissioners of the district, the following assessments were levied; $3 per acre to apply on the original indebtedness of outstanding warrants; $2 per acre to apply on power plant indebtedness; $2 per acre for maintenance and repairs; and $1 per acre to cover interest on warrants, making a total of $8 per acre. Thereafter certificate was issued and filed in the office of the county auditor for the purpose of having the lands within the district assessed, and the sum of $551.44 was apportioned against the lands of appellant and added to the general taxes thereon.

On August 19, 1929, at a regular meeting of the board of commissioners of the district, an assessment was levied identical as to amounts and purposes with the previous assessment. Thereafter certificate was issued and filed and the assessment apportioned among the lands in the district, appellant's assessment amounting to $551.44. In each instance, through unintentional error and mistake, the certificate to the county auditor did not correctly state the real objects and purposes for which said assessments were made, although the moneys collected pursuant thereto were used and intended to be used for the purposes expressed in the assessment by the board.

Appellant has refused to pay taxes resulting from assessments levied by the district, except his proportion of the original assessment and except his proportion of the upkeep and repair of the district, originally estimated by the board and district court at $500 per year, and as a result of such nonpayment of taxes the treasurer and tax collector of Benewah county has caused his lands to be placed upon the delinquent rolls of said county and has issued delinquency certificates covering said land.

The foregoing statement is substantially in accordance with the findings of the trial court and is abundantly supported by the evidence. Our examination of the evidence discloses that appellant, since the organization of the district, had direct knowledge of all the work that was done

by the district, was one of the prime movers in connection with most of it, displayed great interest in the work being done, and was intimately acquainted with the financial condition of the district, which is particularly evidenced by his participation in the agreements with the banks. His lands were greatly benefited by the improvements made. He approved, consented to and acquiesced in everything that was done without objection until after the last assessment had become a lien upon his property. He knew or is presumed to have known that the liability had been incurred by the district for the various improvements and that the only source from which such liability could be paid was by assessment of the lands in the district. Such a situation amply justified the trial court in finding and concluding that at all of the times referred to appellant urged the performance of such work and the making of such expenditures, received the benefit therefrom, and expressly, by the execution of the agreements with the banks above referred to, and otherwise impliedly agreed to pay his proportionate part thereof; that he never at any of said times complained or raised any question of submitting these matters to the district court or objected to the proceedings taken by the commissioners of the district and was fully advised in regard thereto; that he stood by and participated in the expending of said money and the doing of said work and accepted and received the benefits therefrom and is estopped to take advantage of any irregularity or defect in the proceedings whatsoever; and that by reason of appellant's acts and knowledge of everything that transpired and occurred in the creation of the obligations to which he is now objecting, he is estopped from setting up or questioning the validity of any of the acts of said drainage district or its officers in incurring said indebtedness or from setting up any question as to the due or legal proceedings under which said assessments were made or said warrants issued or in any way whatsoever to question said warrants or their issuance or validity, and that he was not entitled to equitable relief.

It would seem that the questions presented by appellant have been decided adversely to his contentions in the case of *Hemenway v. Craney*, 36 Ida. 11, 208 Pac. 407, based on similar facts. The rules announced therein received further approval by this court in *In re King Hill Irr. Dist.*, 37 Ida. 89, 221 Pac. 839, and of the supreme court of North Dakota in *Barnes v. Cass County*, 59 N. D. 135, 228 N. W. 839. No useful purpose can be served by a further elaboration of these rules.

The judgment is affirmed. Costs awarded to respondents.

Lee, C. J., and Givens, Varian and Leeper, JJ., concur.