(No. 6662. June 16, 1939.)

S. H. McDONALD, Appellant, v. CHARLES J. PRITZL, IRL BISHOP and MYRON WHITLEY, Respondents.

[93 Pac. (2d) 11.]

Delana & Delana, for Appellant.

356

T. L. Martin, for Respondents.

GIVENS, J.—Assessments for $118,547 as costs of construction were confirmed, apportioned to the different tracts of land in respondent district upon its organization April 8, 1915, and the total benefits to all the lands of the district determined to be $440,869.11. A bond issue of $120,000 recited to cover the expenses and entire cost of construction and all proceedings under chapter 16, Idaho Session Laws 1913, page 58 (now sec. 41–2501, I. C. A. et seq.), was issued January 1, 1919. The court found on amply sustaining evidence that the total cost of construction between April, 1919, and February, 1921, was $144,242.61. Assessments to pay

these costs of construction, by paying construction warrants and principal on the bond issue totaling 84 per cent of the assessment roll (i. e., of $118,547) which included redemption of 163 bonds or $81,500 thereof were proportionately assessed against the landowners between 1919 and 1934. Appellant, owner and holder of bonds Nos. 164 to 170 in the amount of $3,500, sues for himself and all other bondholders similarly situated, owning and holding bonds Nos. 171 to 220 inclusive, amounting to $25,000, all unpaid.

Appellant sought a writ of mandate to compel the commissioners of respondent district to levy assessments to pay principal and interest of these remaining bonds. The commissioners refused to do so on the ground the assessment of costs of $118,547, as first confirmed, was the limit of liability resting on the landowners; the additional cost not having been authorized by court order as provided and assertedly required in section 41–2531, I. C. A.,[1] or section 41–2530, I. C. A.,[2] passed in 1919, Idaho Session Laws, chapter 183, page 562, and the amendment of 1919 to section 58, chapter 168 of Title 32, Compiled Laws (chap. 16, sec. 23,

[1] 41–2531, I. C. A.: "In any case where the work set out in the plan for drainage as provided in this chapter, is found insufficient, a new estimate of benefits may be made, based on the additional work proposed, and additional assessments may be made on the lands benefited in conformity with the procedure hereinbefore provided, and the lands in said district, or any part of such lands, shall be assessed in proportion to the benefits estimated as accruing to such lands because of such additional work and improvements."

[2] 41–2530, I. C. A.: "In the event that the amount levied shall be insufficient to complete the contemplated improvement, then the board shall levy an additional assessment sufficient to complete the same, including the cost of collection, and all legal and other proceedings in connection therewith. Such additional levy shall be made against the same property, and in the same proportion against each, as was the original levy, and after approval thereof by the judge, before whom said proceedings are pending, shall be spread on the books of the auditor and tax collector in the same manner as is required in the case of the original levy. A brief general notice of the filing of the application for confirmation of such additional levy shall be published in a newspaper of general circulation in each of the counties in which such district is situate, at least once each week, for three consecutive weeks prior to the date fixed for confirmation."

Sess. Laws 1913, p. 73). These amendments are now contained in sections 41–2561, 41–2562, and 41–2563, I. C. A.[3]

The trial court considered correct respondents' theory that the assessed cost for construction as confirmed by the court was the limit of liability (in the absence of further court order), and entered judgment accordingly, denying the writ, hence this appeal.

The sole and ultimate question of law involved resolves around this conclusion of the trial court:

"III

"That the Commissioners of said District have no right or authority to make calls or assessments against the lands

---

[3] 41–2561, I. C. A.: "The board of county commissioners of any drainage district organized under the provisions of this chapter shall, on or before the third Monday of September of each year, make an estimate of the cost of maintenance of the drainage system constructed in such district, which estimate shall include the cost of making any necessary repairs that it might become necessary to make in the maintenance of such system. Such estimate shall be made for the succeeding year, and the amount so estimated shall be certified by the board of commissioners to the auditor of the county in which such district is located, on or before said date, and the amount thereof shall be apportioned to the landowners in such district benefited by said improvement in proportion to the maximum benefit originally assessed, and such amount shall be added to the general taxes of such landowners and collected therewith."

41–2562, I. C. A.: "The commissioners may also levy assessments for any expense necessarily incurred by them for construction, maintenance, repair, or any extraordinary reasons, and also may add to said assessment sufficient to pay any deficiency occurring the preceding year or any other unpaid warrant indebtedness, if any, or to pay any outstanding warrants; provided, that any assessments to be hereafter made by any drainage commissioners to pay warrants shall not exceed twenty per cent of the original cost of organization and construction in addition to the assessments which may be levied under section 41–2536, and such assessments, when made, shall be apportioned and collected as hereinbefore provided for."

41–2563, I. C. A.: "Warrant or any other evidence of drainage district indebtedness heretofore issued by the board of drainage commissioners of any drainage district for such necessary construction, maintenance, repair or any extraordinary reasons, shall be and hereby are made legal and valid obligations of such drainage district."

within said District for any or all of the above named purposes (construction and preliminary proceeding costs) in excess of 100 per cent of said assessment roll as confirmed by the Court,'' *without court action.* (Addition and italics ours.)

Appellant contends that as long as the total assessments for construction costs, though in excess of those first confirmed, are within the assessment of benefits as found by the court on confirmation (i. e., $440,869.11) the commissioners had authority to make such additional assessments without court order or notice to the landowners; and that if this theory is not correct, since all the money paid out by the district in construction costs was for the benefit of the landowners, equity justifies the assessments to repay the bondholders for the amount they contributed.

This court in *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785, and *Straus v. Ketchen,* 54 Ida. 56, 28 Pac. (2d) 824, held drainage districts special improvement districts of limited liability, saying in *Elliott v. McCrea, supra* (p. 530), sustaining the constitutionality of the Drainage Act that:

'' . . . . the assessment here authorized to be levied runs against each specific tract or parcel of land to be benefited, and the amount thereof is ascertained, determined and assessed in advance, so that every property owner can know just how much he is to pay and the bondholder can ascertain just the extent of the claim he has against each tract of land. In such case, there is no municipal liability and no municipality to be rendered liable for the payment of the indebtedness.''

Clearly referring to the initial assessments for costs as those are all that have to be definitely found, it being necessary as to total benefits only that they exceed the cost of construction. (Secs. 41–2514, 41–2519, I. C. A.) Further in *Straus v. Ketchen, supra,* it is said:

''There is no merit in the contention made by the defendant that the property owners within the district can be called upon and required to pay assessments equal to the amount of the actual benefits inuring to the respective parcels of land, by reason of the improvements made. That question

was definitely settled by this court in the case of *Elliott v. McCrea, supra,* where the court said, at page 530:

" 'That the assessment here authorized to be levied runs against each specific tract or parcel of land to be benefited, *and the amount thereof is ascertained, determined and assessed in advance,* so that every property owner can know just how much he is to pay and the bondholder can ascertain just the extent of the claim he has against each tract of land.' (Italics ours.)

"The assessment referred to by the court in such language is the one that is made by the commissioners in the first instance, to pay for the costs of the improvements, costs of proceedings, etc., which is then submitted to the court for confirmation. The property owner, at such time, knows the full extent of the assessment made against his property, which gives him an opportunity of appearing before the court and protesting as against its confirmation, if he feels that it is not fair and equitable. It had no reference to any assessments that might be later made, equal to the actual benefits accruing to the respective pieces of land, because that fact had never been determined.

At no time has the drainage district law required that the actual benefits accruing to each individual tract of land be definitely determined. Section 41–2514, I. C. A., providing for the determination of the assessments as benefits, does not provide as a duty on the part of the commissioners to ascertain and determine the actual benefits accruing to each tract or lot, or that the amount of benefit to each tract or lot shall be set forth in connection therewith. Subdivision 5 of said section merely requires the commissioners to determine what lands will be 'benefited by the construction of the proposed works,' and further, 'whether the benefits will equal or exceed the aggregate cost of constructing such work.' In other words the commissioners need only find that the total benefits will equal or exceed the total cost.

"The fact that the commissioners of Drainage District No. 2 did actually set forth opposite each tract or lot of land the amount which they estimated the same was actually benefited, is no more binding than if they had not done so at all, for under the law they were not required to do so.

In view of the fact that no provision is made in the drainage district law to have specifically determined the actual amount of the benefits accruing to the same on account of the improvements, it must necessarily be concluded that the legislature never intended that assessments could be made against the property equal to the actual benefits derived. There is no way of determining, now, how much each tract of land could be assessed, if the maximum amount would be the actual benefits derived, as that fact has not been legally determined.

"The particular sections of the statute cited by defendant and especially section 41–2562, relied upon, do not in any manner change this conclusion reached. Part of said section was originally found in chapter 16, 1913, Session Laws, amended by the legislature in 1919, chapter 20. Certainly the legislature did not intend by amending said section in 1919 to extend the right of assessment to the maximum limit of actual benefits accruing. Had the legislature so intended, knowing the construction that had been placed on the right of assessment, as laid down in *Elliott v. McCrea, supra,* language would have been used clearly stating such fact, and provision would have been made to have legally determined the specific amount of benefits actually accruing to each individual tract or lot of land.

"Defendant also refers us to a number of decisions of other jurisdictions, which she contends support her view. Upon an examination of such cases cited, we find that in nearly every instance the case is based upon a specific statute of the state, providing specially that assessments may be made by the district to the maximum limit of the actual benefits accruing. One case cited by defendant seems to hold that implied power exists without express statutory authority therefor, namely, *In re Dancy Drainage Dist.,* 190 Wis. 327, 208 N. W. 479, 481, in which the court said:

" 'Since each individual owner of land cannot drain his own effectively, the law permits a number to act jointly as a *quasi* public corporation to drain a large area. And thus a drainage district is formed in which all landowners therein become jointly interested and jointly bound. But the law is careful to place limits upon the liability of each

owner by providing that it shall not exceed the amount
assessed for benefits. It is equally careful to provide means
for discharging the indebtedness of the district by requiring
assessments to meet it. There are at least two outstanding
landmarks in the financial part of the drainage scheme,
namely, that the liability of an owner of land therein cannot
exceed his assessment for benefits, and the creation of a fund
to pay the costs incurred, both principal and interest.

. . . . . . . . . . . . . .

" 'Another fact must be borne in mind also, and that is
that the bonds issued nearly up to the total assessment for
construction, as they usually are because the district has
no money except as it is raised by assessments, would not be
salable in the market, for there would be no adequate margin
of security. For these reasons, it is apparent that the legis-
lative scheme, whether so in terms expressed or not, must
have included the right to additional assessments up to the
limit placed by the assessment of benefits for the payment
of principal and interest due on lawful debts incurred by
the district.'

"Again said decision is distinguishable from the case at
bar, in that the Wisconsin court based its holding upon the
proposition that according to the legislative scheme of the
Wisconsin law in force at the time, it was intended that such
assessments were permissible, for the reason that otherwise
the bonds would not be salable in the market, for there would
be no adequate margin of security. That such was not the
intention of the Idaho legislature seems certain, as section
41–2552, providing for the issuance of bonds, expressly makes
provision for a margin of safety, in that the total amount
of bonds to be issued shall in no instance exceed 90 per
cent of the assessment levied against the lands of the district.
This provision creating a margin of safety was not found
in the original act, but was provided for by amendment in
1919, chapter 183, sec. 11, Session Laws 1919.

"Much stress has been placed upon this provision of our
law providing a margin of safety by petitioners, they con-
tending that by reason thereof all bondholders are fully and
amply protected as to the full payment of all bonds issued,
in that such 10 per cent margin is amply adequate to insure

the payment of all bonds, even though some property owners default in the payment of their assessments, and even though property owners, at any time, were permitted to pay the assessment against their respective tracts of land in full, either by payment in cash or with bonds of the district, as provided by chapter 183, Session Laws 1933, which was not permissible under the law at the time the bonds were issued. The wisdom of such legislation, providing that the total amount of the bonds shall not exceed 90 per cent of the total assessments levied against the lands of the district, as to whether the same was an adequate margin of safety, was for the legislature, and this court is not concerned. But we are not in accord with the contention, however, that by reason of the margin of safety provided for that the 1933 act does not impair the obligation of contract, for the reasons heretofore pointed out.''

In *Hemenway v. Craney*, 36 Ida. 11, 208 Pac. 407, *In re King Hill Irrigation District*, 37 Ida. 89, 221 Pac. 839, and *Walker v. Hughes*, 52 Ida. 234, 13 Pac. (2d) 249, this court held landowners actively participating in having work done for which additional assessments not pursuant to court order were made, and the district having received the benefits of such additional work, could be compelled to pay the assessments over and above the original assessed costs. The same point as now contended for by appellant was urged in *Hemenway v. Craney, supra,* at p. 15, thus:

''The question of notice is not in the case, as the notice upon the assessment of benefits was given and the assessment of benefits was determined. The whole matter of the levy of subsequent taxes after the original assessment is purely mathematical and no discretion is given the commissioners in saying what proportion any land owner shall pay, as that has been settled by a final decree of the court. (*Gillette v. Denver,* 21 Fed. 822.)''

The awarding of relief in *Hemenway v. Craney, supra,* on the ground of estoppel upon the holding of active participation, rejected and held incorrect appellant's theory and contention, the court saying:

''It is clear that when the commissioners of said district became aware of the fact that the funds raised by the bond

issue were about to be exhausted and that a great amount of work was yet to be done they should have proceeded to levy an additional assessment in the manner provided by said section 4522. As we understand appellant's position he is seeking to avoid payment of the proportion of the additional expense assessed against his land upon the sole ground that the drainage commissioners attempted to make said assessment a lien upon his land without submitting it first to the district court and, after notice to all interested parties, obtaining confirmation of said assessment by the court. From the findings of the court, which are sustained by the evidence, it is clear that appellant had ample opportunity at the beginning of the expenditures of which he complains to go into court and compel the commissioners to first submit another estimate of the proposed expenditures to the court and obtain its confirmation before proceeding with the additional work. There can be no doubt that he knew of the uncompleted condition of the work and that there was yet to be built along the St. Joe River 1,000 or 1,200 feet of dike in order to keep the high water out of the district, and that without such construction the work already done would be entirely worthless and a total loss to the land owners of the district. He knew that he had been served with no notice of proceedings to make an additional levy, and if he proposed to resist the collection of any portion of the additional expense by assessments on his land he had no right to wait until the improvement had been completed and all the benefits to be derived therefrom secured by himself before attacking the expenditure. He knew the unfinished condition of the improvements that were being made in the drainage district and if he knew, as the court found, that the funds raised by the bond issue had been exhausted or were about to be exhausted he must have known that a further heavy assessment must be made against the lands of the district to complete the improvements. Even though the commissioners neglected to submit the second assessment to the district court for approval it would be manifestly unfair to the remaining land owners of the district to permit appellant, with all the information that the trial court found him to have had, to escape payment of a fair proportion

of the expense which so greatly enhanced the value of his land. In McQuillin's Municipal Corporations, sec. 2120, page 4517, the author says: 'Finally, a property owner will not be estopped from contesting the validity of the assessment by remaining silent while the improvement and assessment is being made unless he knew (1) that it was being made; (2) that the public authorities intended to assess the cost thereof or some part of it upon his property; (3) that the infirmity or defect in the proceedings, which he is to be estopped from asserting existed; and (4) it must appear that some special benefit accrued to his property.'

"Under this rule appellant should be held for the assessment against his lands because (1) he knew the improvement was being made. (2) He knew there was no way by which the cost could be paid except by assessing his land. (3) He knew that no steps had been taken by the drainage commissioners to bring an additional assessment before the district court, and (4) it is conclusively shown by the record that his property was greatly benefited by the expenditure."

Such holding and conclusion adverse to appellant's proposition is also strengthened by the subsequent holdings in *Walker v. Hughes, supra,* and *Straus v. Ketchen, supra.*

Numerous authorities are cited by appellant, and there are others, which tend to support his views;[4] conceding that

---

[4] *Stone v. Little Yellow Drainage Dist.,* 118 Wis. 388, 95 N. W. 405; *Winkelmann v. Moredock etc. Drain. Dist.,* 170 Ill. 37, 48 N. E. 715; *Meridian Line Drainage Dist. v. Wiss,* 258 Ill. 600, 101 N. E. 941; *Spring Creek Drainage Dist. v. Elgin, J. & E. R. Ry. Co.,* 249 Ill. 260, 94 N. E. 529; *Prezinger v. Harness,* 114 Ind. 491, 16 N. E. 495; *Board of Drainage Commrs. v. McGill,* 251 Ky. 400, 65 S. W. (2d) 91; *State v. Risty,* 51 S. D. 336, 213 N. W. 952; *People v. Allen,* 317 Ill. 92, 147 N. E. 479; *Ballard v. Bagwell,* 91 Ind. App. 138, 170 N. E. 344; *Drainage Dist. No. 7 v. Exchange Trust Co.,* 175 Ark. 934, 2 S. W. (2d) 32; *Pepper v. Scott,* (C. C. A., 8th) 53 Fed. (2d) 202; *Fetzer v. Johnson,* (Okl.) 4 Fed. (2d) 865; *Conway v. Town of Grand Chute,* 162 Wis. 172, 155 N. W. 953; *Plummer v. Pitt,* 167 Iowa, 632, 149 N. W. 878; *In re Dancy Drainage Dist.,* 190 Wis. 327, 208 N. W. 479; *Rauch v. Himmelberger,* 305 Mo. 70, 264 S. W. 658; *First Wisconsin Nat. Bank v. Town of Catawba,* 183 Wis. 220, 197 N. W. 1013; *Ellefson v. Smith,* 182 Wis. 398, 196 N. W. 834; *Thompson v. Town of*

some of them do, most of them are upon statutes different from ours, with facts on estoppel, and otherwise not present herein. The substance of their holdings have been distinguished in *Straus v. Ketchen, supra*, and it would serve no good purpose for an individual minute analysis of each case. The previous expressions and holdings of this court strictly limiting liability in special improvement districts can only justify a holding on this point adverse to appellants.

██ The liability of each particular landowner became fixed and determined at the time of the confirmation of the assessments for costs, and the assessments thus imposed became the limit of his liability for construction costs. The record shows the landowners actually paid only $111,034.50 and appellants contend the landowners may and should be assessed for the difference between this and $118,547.69, claiming they owe even under respondent's theory at least up to that amount for construction costs. However, the record also shows that assessments for construction totaling $143,486.91 were levied, and though there is no showing as to which particular landowners paid their assessments in full, those who did pay paid instead of on the basis of 100 per cent of the $118,547.69, 114.5 thereof, thus those who paid, paid 14.5 per cent more than was legitimately chargeable to them, the difference arising from the delinquencies amounting to $33,-961.68, $32,452.41 thereof being chargeable, or a credit, to the construction fund if paid. If any of said delinquencies are later paid by the landowners such funds should be paid by the district on the outstanding bonds in their numerical order. (Sec. 41–2557, I. C. A.) The court cannot now compel a further assessment when to do so would impose liability on landowners who already have paid not only in full, but 14.5 per cent in excess of the assessment properly chargeable to them. One landowner cannot be asked to assume the

*Elton,* 109 Wis. 589, 85 N. W. 425; *Frederick v. Douglas County,* 96 Wis. 411, 71 N. W. 798; *Koch v. City of Milwaukee,* 89 Wis. 220, 62 N. W. 918; *Geib v. Morrison County,* 119 Minn. 261, 138 N. W. 24, 9 A. L. R. 839; *Mound City Land & S. Co. v. Miller,* 170 Mo. 240, 70 S. W. 721, 94 Am. St. 727, 60 L. R. A. 190; Annotations: 9 A. L. R. 842; 63 A. L. R. 1179; *In re Lower Baraboo River Drainage Dist.,* 199 Wis. 230, 225 N. W. 331, 63 A. L. R. 1165.

liability of another, so the record does not herein justify further assessment for construction costs.

The subsequent amendments to the act of 1913 do not aid appellant, as shown in the analysis thereof in *Straus v. Ketchen, supra.*

Respondent urges the bonds were sold for less than par, thus violating section 41–2552, I. C. A. The record discloses, however, that the district received par value for the bonds in the exchange of bonds for warrants. The discount was between John E. Price and Co. and the Western Construction Co., as a method whereby, apparently, Price & Co. financed the Western Construction Co.

The remaining question is whether appellant is entitled to equitable relief because the money received by the district from the sale of the bonds and that paid out in assessments sufficient to retire the bonds and that in addition thereto paid by warrants for construction costs, has been expended for the benefit of the landowners.

*Mandamus* will issue only where there is a clear right to the relief sought and a clear duty resting on the defendant to do the act sought to be compelled. (*Reynard v. City of Caldwell*, 53 Ida. 62, 21 Pac. (2d) 527, 90 A. L. R. 1124.) Therefore, since under the statutes as correctly construed collection of these assessments may not be enforced as a matter of right, unless a clear equitable right is shown recovery may not be had.

There is no question of the validity of the bonds herein, the only question is as to the right to levy additional assessments upon the landowners without notice thereof to them or opportunity to have been heard before the additional construction work was authorized or charges therefor placed upon their land. In this connection it must be remembered that a drainage district is imposed upon the landowners without them having a voice therein by vote as in an irrigation district (secs. 42–110 to 42–213, I. C. A.) ; their only participation being by way of protest (secs. 41–2508 to 41–2526, I. C. A.)

Changes of plan increased construction costs from $118,547 to $144,242.61, a difference of $25,695.61, almost 18

per cent. Considering that a valid order for such increased construction costs could have been made in the first place and therefore that the enforcement of these assessments places them in a voidable as distinguished from a void classification (*Village of Heyburn v. Security S. & T. Co.*, 55 Ida. 732, 49 Pac. (2d) 258) the record discloses that interest at the rate of 7 per cent has been paid on the first bond issue up to 1935 and if principal and interest on outstanding bonds of the first issue are now required to be paid, the landowners will pay an additional amount of $38,500 principal and interest thereon figured on a decreasing principal from 1935 to 1938 when the last bonds mature, in the amount of $7,-420 or a total of $45,920 principal and interest. If the landowners now be required to pay the principal of the unpaid bonds they will in effect be paying the principal of the cost of construction to the extent of the difference between the $144,242.61 and the $118,547 twice; true, not to appellants, but out of pocket nevertheless so far as the landowners are concerned. This is not equitable and relief may not go beyond the interest they would have had to pay up to the respective maturity dates of the bonds. (*Board of County Commrs. v. Kiowa Nat. Bank of Snyder*, 175 Okl. 3, 52 Pac. (2d) 777.) Interest does not come within the limit of construction costs (sec. 41–2558, I. C. A.) and the bondholders are entitled to their interest, and levies should be made to pay therefor. That is, 7 per cent on the unpaid principal ($38,500) of the bonds herein for the years 1935, 1936, 1937, 1938 and 1939.

The judgment thus modified is affirmed.

Costs to appellants.

Ailshie, C. J., Budge and Holden, JJ., and Winstead, D. J., concur.

Morgan, J., deeming himself disqualified did not participate in the decision of this case.

Petition for rehearing denied.